APPEAL NO. 23-10186-A

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

REGINA M. BENNETT,
PLAINTIFF/APPELLANT

v.

BUTLER COUNTY BOARD OF EDUCATION, ET AL.,
DEFENDANTS/APPELLEES

On Appeal from the United States District Court
For the Middle District of Alabama
Case No.: 2:18-cv-1061-RAH-JTA

OPENING BRIEF OF THE APPELLANT

Fred D. Gray, Jr.
GRAY, LANGFORD, SAPP, MCGOWAN,
  GRAY, GRAY & NATHANSON, P.C.
Post Office Box 830239
Tuskegee, Alabama 36083
(334)727-4830 Telephone
(334)727-5877 Facsimile
fgrajr@glsmgn.com

J. Carlton Sims, Jr.
Post Office Box 373
LAW OFFICE OF
  J. CARLTON SIMS, JR.
Post Office Box 373
Montgomery, Alabama 36101
(334)328-2294 Telephone
jcsimslegal@gmail.com

ATTORNEYS FOR APPELLANT

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to *Federal Rules of Appellate Procedure* 26.1 and Eleventh Circuit Rules 26.21. 26.2 and 26.3, Plaintiff-Appellant, Regina M. Bennett submits the following list of persons and entities known to her to have in interest in the outcome of the appeal:

Adams, Hon. Jerusha T.

Alabama Education Association

Alabama Trust for Boards of Education

Arrington, Monica

Ball, Ball, Mathews & Novak, P.A.

Bell, Shawnda

Bennett, Alicia

Brown, LeNicki

Butler County Board of Education

Calloway, Charles

Educators Liability Trust Fund

Eiland, Joe

Gray, Jr., Fred D.

Gray, Stanley F.

Gray, Langford, Sapp, McGowan, Gray, Gray & Nathanson, P.C.

USCA11 Case: 23-10186    Document: 35    Date Filed: 06/07/2023    Page: 2 of 33

Hamilton, Lewis S.

Hamilton, Linda

Hill, Hill, Carter, Franco, Cole & Black PC

Huffaker, Jr., Hon. R. Austin

Ingram, Allison

Jones, Mickey

Marsh, John

Nimmer, Michael

Relf, Victoria

Robinson, Lois

Seale, James R.

Sellers, Brandon

Sims, Jr., James C.

Strycker, John

West, Joseph

West, Margaret

**OF COUNSEL**

# STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested

# TABLE OF CONTENTS

Statement of Interested Persons and Corporate Disclosure Statement. . . . . . . . . . . . . . . .i

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iii

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .v

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .viii

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

    I.    THE DISTRICT COURT ABUSED ITS DISCRETION BY DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND

    II.   THE DISTRICT COURT ERRED IN GRANTING MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S RACE DISCRIMINATION CLAIMS UNDER TITLE VII.

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

# TABLE OF AUTHORITIES

**CASES**                                                      **PAGE**

*Alston v. Swarbrick*, 954 F.3d 1312, 1317 (11th Circ. 2020)...................8

*Anderson v. Liberty Lobby*, 477 US 242, 249 (1986)...................8

*Barnett v. Athens Reg'l Med. Ctr.*, 550 F.App'x 711, 714
(11th Cir. 2013)...................18

*Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53 (2006)...............17

*Burnette v. Northside Hosp.*, 342 F.Supp. 2d 1128, 1136
(N.D. Ga. 2004)...................18

*Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)...................17

*Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1449,1453
(11th Cir. 1998)...................18, 19

*Duble v. FedEx Ground Package Sys., Inc.*, 572 F.App'x 889, 895
(11th Cir. 2014)...................17

*Foman v. Davis*, 371 U.S. 178, 182; 83 S.Ct. 227, 230; 9 L.Ed.2d
222 (1962)...................13

*Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763 (1976)...................10, 20

*Gowski v. Peake* 682 F.3d 1299 (11th Cir. 2012)...................14

*Hart v. United States Att'y Gen.*, 433 F.App'x 779, 781-82
(11th Cir. 2011)...................18

*Hess v. FDIC*, 519 U.S. 1087, 117 S.Ct. 760 (1997)...................8

*Hinson v. Clinch Cnty. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000)..........18

*Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1233-34 (11th Cir. 2001)........18

*Howard v. Walgreen Co.*, 605 F.3d 1239, 1245 (11th Cir. 2010)................... .....19

*Laurie v. Ala. Ct. of Crim. App.*, 256 F.3d 1266, 1276 (11th Cir. 2001)......... ......14

*Lawson v. Plantation Gen. Hosp., LP.*, 704 F.Supp 2d 1254, 1269
(S.D. Fla. Mar. 20, 2010)............................................................... .....19

*Martin v. Eli Lilly & Co.*, 702 F.App'x 952, 958 (11th Circ. 2017)............... .....17

*Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp*,
475 US 574, 587 (1986)................................................................ ......8

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973)............. ......10,  16, 20

*Motorcity of Jacksonville Ltd. V. Southeast Bank, N.A.*, 83 F.3d
1317, 1323 (11th Cir. 1996)(en banc)............................................... ......8

*Redd v. United Parcel Serv.*, Inc., 615 F.App'x 598, 603
(11th Cir. 2015)............................................................................17

*Richardson v. Jackson*, 545 F.Supp 2d 1318, 1328 (N.D. Ga. 2008)..............19

*Stewart v. Argos Ready Mix, LLC*, No. 3:16-CV-356-MHT-WC;
2016 WL 7238915................................................................... ....18

*Vernedoe v. Brennan*, No. CV-418-067; 2021 WL 1115300
(S.D. Ga.Mar. 2, 2021).................................................................18

*Vernedoe v. Postmaster Gen.*, No. 21-11186; 2022 WL 35614
(11th Cir. Jan. 4, 2022)................................................................18

## <u>OTHER AUTHORITIES</u>

42 U.S.C. §2000e, et seq.................................................................. .......2

Federal Rules of Civil Procedure........................................................ ....2, 4

Fourteenth Amendment of the United States Constitution..........................3

Title VII Civil Rights Act of 1964......................................................... ........2

## JURISDICTIONAL STATEMENT

This appeal was timely filed under Fed. R. App P. Rule 4(a)(1). The appellant's jurisdiction is based on 28 U.S.C. §1291. Jurisdiction lies in this court under 28 U.S.C. §41.

## STATEMENT OF THE ISSUES

1.    Whether the District Court abused its discretion in denying Plaintiff's Motion for Leave to Amend her Complaint.

2.    Whether the District Court erred in granting Defendants/Appellees Motion for Summary Judgment on Appellant Regina Bennett's individual Title VII claims when the facts before the Court demonstrate the existence of genuine issue as to material fact.

## STATEMENT OF THE CASE

### Course of Proceeding and Disposition Below

This is a race discrimination employment case. On December 20, 2018, Six (6) plaintiffs collectively filed an action against Butler County Board of Education, its five (5) members, individually and in the official capacity as board members; and Superintendent John Strycker, individually and in the official capacity, for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"); and for engaging in and condoning a continuing pattern and practice of race-based adverse employment actions against African-American employees of the Butler County Board of Education. (Doc. 1 ^). Plaintiffs sought injunctive, equitable and monetary relief pursuant to Title VII of the Civil Rights Act of 1964, as amended, against Defendants. Additionally, Plaintiffs' brought Constitutional claims for violation of Equal Protection and Due Process rights under the14th Amendment. *Id.*

Plaintiffs Joseph West, Margaret West, Regina Bennett, Willie Thornton, Lenicki Moore, and Shawnda Bell are current and/or former employees of the Butler County Board of Education who alleged that they were subjected to discriminatory employment practices. (Doc. 1). Plaintiffs alleged claims against the BCBOE individual Board members Linda Hamilton, Mickey Jones, Michael

2

Nimmer, Lois Robinson, Brandon Sellers, former BCBOE Superintendent John Strycker and current BCBOE Superintendent Joe Eiland.

Bennett advanced Title VII claims of race discrimination, retaliation, hostile work environment; and Equal Protection and Due Process claims under the Fourteenth Amendment of the United States Constitution. (Doc. 1 at ¶168-¶210; Doc. 245 at 8-9).

Between May 15, 2018 and December 12, 2018, Butler County Board of Education and Superintendent Strycker transferred and reassigned African-American employees in both guidance counselor and administrative positions, but failed to transfer or reassign any White guidance counselors and administrators who did not request transfer or reassignment. Doc. 1 at ¶28-¶32.

Defendants treated Mrs. Bennett differently than similarly situated White employees when they reassigned her from guidance counselor to kindergarten teacher, a position which she had never held in her seventeen (17) years with Butler County School System and a position of lesser prestige and with much different responsibility than counselor. Defendants' actions effectuated a change in the terms, conditions and status of her employment.

Summary judgment was granted in favor of the Defendants and against all Plaintiffs on all counts with the exception of Shawnda Bell whose cause of action that survived was race discrimination. (Doc 245). The Bell case settled on or about

December 9, 2022 (Doc. 340). Bennett's appeal is now before this Honorable 11th Circuit Court of Appeals.

On December 16, the Court entered a text order directing the Clerk to reopen the case for entry of final judgement. (Doc. 342). On December 16, 2022, the Court entered Final Judgment as to the remaining claims pursuant to Federal Rule of Civil Procedure 58. (Doc. 343).

On January 13, 2023, Regina Bennett filed her Notice of Appeal (Doc. 348), the brief for which is hereby submitted.

## STATEMENT OF THE FACTS

In February 2017, the Butler County Board of Education (BCBOE or the Board) hired Dr. John Strycker as its new superintendent. Strycker took over the superintendent role in July 2017 after the school district received a "69/D" on the 2016-2017 State Report Card by the Alabama State Department of Education (ASDE). (Doc. 156 at 3; Doc. 162-10 at 40; Doc. 164-2 at 41; Doc. 165-8 at 63–68.)

The school district consisted of its Central Office and six schools: W.O. Parmer Elementary School (K-2), Greenville Elementary School (3-4), Greenville Middle School (5-8), Greenville High School (9-12), including its career tech academy, Georgiana School (K-12), and McKenzie School (K-12).

When Dr. Strycker began work in earnest as superintendent of Butler County Board of Education, his goal was simple and that was to get rid of the African-American administrators in the central office as well as African-American counselors, to the extent possible.

Further, just days after arriving, Strycker hired Joe Eiland (white male) and Lisa Adair (white female) as administrative assistants in the Central Office.

Plaintiffs Margaret West (black female), Shawnda Bell (black female), Lenicki Moore (black female), and Regina Bennett (black female), were all long-term employees and current guidance counselors who were selected for personnel

5

moves. Ms. West, Bell, and Moore were to be transferred to different schools within the district, and Bennett was to be reassigned to a different position within the same school. (Doc. 158 at 5–6.) Tomesha Hamilton (black female, board member's niece by marriage), Charles Todd Henderson (white male), Tonya Coker (white female), and Haden Horton (white female) were not transferred, although Strycker sought to transfer Horton but purportedly relented after Horton's school principal objected. (Doc. 165-8 at 192–93; Doc. 167-12 at 279–80; Doc. 168-1 at 295; Doc. 175-1 at 3.)

**Bennett**: Bennett was reassigned within W.O. Parmer from guidance counselor to kindergarten teacher. (Doc. 162-10 at 33–34, 40–41.) Lenicki Moore took Bennett's former position. (Doc. 159 at 11.) While Bennett suffered no change in compensation, she believes her future job advancement prospects were harmed and that she was transferred to a less prestigious position that had less student impact. (Doc. 162-10 at 33; Doc. 183-1 at 25–26.) The employment action taken was discriminatory, adverse, retaliatory and harassment under Title VII.

Bennett was given no reason for her reassignment (doc. 162-11 at 9), but the reassignment occurred shortly after a series of disagreements between Bennett and her principal, Jacqueline Thornton (black female), who Bennett had previously accused of harassing her, (doc. 154-9 at 3–5; doc. 162-10 at 47–48, 53, 158–60).

The other two Plaintiffs—Willie Thornton (black male) was transferred

6

from Special Education Director to Special Education Teacher in a self-contained classroom; and Joseph West (black male), was transferred from Assistant to the Superintendent to W.O. Parmer Elementary School Assistant Principal, reporting directly to a principal who had years earlier reported to him.

Upon a perfunctory opportunity to be heard at board meetings in May, 2918, the board transferred each of plaintiffs who objected to the respective transfers. During its May 15 and May 31, 2018, board meetings, the Board considered and voted on twenty personnel actions in total. (Doc. 154-18 at 5.)

Pursuant to Board Policy dealing with internal reassignments within the same school, Bennett was not allowed to speak at the meeting. (Doc. 154-8 at 5; Doc. 154- 9 at 5.)

## STANDARD OF REVIEW

Denial of leave to amend is reviewed for abuse of discretion. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999). Where leave to amend is denied based on futility, the review is *de novo. Motorcity of Jacksonville Ltd. v. Southeast Bank, N.A.*, 83 F.3d 1317, 1323 (11th Cir. 1996) (en banc), *vacated on other grounds sub nom Hess v. FDIC*, 519 U.S. 1087, 117 S. Ct. 760 (1997).

This court reviews de novo on order of summary judgment, *Alston v. Swarbrick*, 954 F.3d 1312, 1317 (11th Cir. 2020). The facts must be taken as the plaintiff alleges them, and reasonable inferences and doubts about the evidence must be resolved in the plaintiff's favor. At the summary judgment stage, the district court's task is to determine if the record contains evidence of a genuine dispute of material facts. *Anderson v. Liberty Lobby*, 477 US 242, 249 (1986). Only if the record in its totality could not lead a reasonable jury to find in the plaintiff's favor should summary judgment be granted. *Matsushita Elec. Idus. Co., Ltd. v. Zenith Radio Corp.* 475 US 574, 587 (1986).

## SUMMARY OF ARGUMENT

**Issue 1.**

On December 17, 2019, Plaintiffs filed their First Amended Complaint (Doc. 67). On December 18, 2019, upon notification from a clerk of the court, Plaintiffs filed their Motion for Leave to File Amended Complaint. (Doc. 69). The First Amended Complaint proposed to add one new defendant in his individual and official capacity and at least ten new claims for relief in addition to the already eight existing claims." (Doc. 120, p.3). Plaintiff Bennett proposed to add the theory of retaliatory hostile work environment harassment at Count VIII. (Doc. 67, p.41).

On January 8, 2020, the trial court entered an Order denying Plaintiffs' Motion for Leave to Amend. (Doc 74). On March 10, 2020, Plaintiffs filed a Motion to Reconsider Motion for Leave to Amend Complaint. On March 20, 2020, the court denied the Motion to Reconsider. (Doc. 120, p.13).

The court's denial of Plaintiff Bennett's retaliatory hostile work environment harassment claim was an abuse of discretion because of the inconsistency with the spirit of the Federal Rules. Plaintiff Bennett was denied the ability to have all of her claims heard on the merits as justice requires.

**Issue 2.**

The district court erred when it found that Bennett's reassignment did not constitute an actionable adverse action and thereby granted summary judgment

as to Bennett's race discrimination claims under Title VII. (Doc 245 at 24).

The district court's application of a heightened standard conflicts with the statute's objectives. Interpreting Section 2000e-2(a)(1) to cover only "significant" or "material" employment actions is atextual and mistaken. "The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to *eliminate* those discriminatory practices and devices" that operate in the workplace. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973) (emphasis added). "Congress intended to prohibit *all practices in whatever form* which create inequality in employment opportunity due to discrimination." *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763 (1976) (emphasis added). The standard imposed by the district court is contrary to the purpose of Title VII because it allows discriminatory practices so long as they do not rise above a heightened standard that is not in the statute. Section 2000e-2(a)(1)'s requirements, as enacted by Congress, impose appropriate limits for bringing a Title VII anti-discrimination claim. The heighted limits added by the court have no basis in the statutory text, structure, or purpose.

## <u>ARGUMENT</u>

## I.   THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND.

On February 28, 2019, the parties conducted the Rule 26 planning conference. In the proposed scheduling order to the court, agreed to September 1, 2019 as deadline to join additional parties and amend the pleadings. (Doc. 20, ¶4(b)). On March 6, 2019, the court issued the initial scheduling order in the case. (Doc. 23). The initial scheduling order set the matter for trial on August 24, 2020 and set all motions to amend or add parties be filed on or before August 30, 2019. (Doc. 23, p.1, Section 1; p.2, Section 4).

On May 29, 2019, the parties filed a joint motion to extend the deadline to file amended pleadings. (Doc 29). The court granted the joint motion (Doc. 30). On September 16, 2019, the parties filed a Joint Motion to Continue the Trial Date and for a New Scheduling Order, which was granted by the court on October 2, 2019. (Docs. 45, 48 & 53). The New Scheduling Order reset the deadline for amending pleadings or adding parties to December 17, 2019. (Doc. 53, p.2, ¶(2)(D)).

On December 17, 2019, Plaintiffs filed their First Amended Complaint (Doc. 67). On December 18, 2019, upon notification from a clerk of the court, Plaintiffs filed their Motion for Leave to File Amended Complaint. (Doc. 69). The First Amended Complaint proposed to add one new defendant in his individual and

11

official capacity and at least ten new claims for relief in addition to the already eight existing claims." (Doc. 120, p.3). **Important to the issue presented here, Plaintiff Bennett proposed to add the theory of retaliatory hostile work environment harassment at Count VIII.** (Doc. 67, p.41).

The Defendants filed an objection to the Plaintiffs' motion on January 6, 2020. (Doc. 73). On January 8, 2020, the trial court entered an Order denying Plaintiffs' Motion for Leave to Amend. (Doc 74).

On March 10, 2020, Plaintiffs filed a Motion to Reconsider Motion for Leave to Amend Complaint that included Plaintiffs' showing of good cause as to why leave to amend the complaint should be granted. (Doc. 96). Plaintiffs asserted that the Amended Complaint was "necessary to clarify existing allegations and causes of actions, while adding necessary claims that have been discovered during the discovery process." (Id. at 7). Defendants then filed an objection to the motion. (Doc. 113).

On March 20, 2020, the court denied the Motion to Reconsider, finding that there was undue delay by the Plaintiffs. (Doc. 120, p.13). The court also held that an amendment would "require significantly more discovery and additional depositions of the parties and witnesses, most of whom have already been deposed, and thus delay disposition of the case, and undoubtedly will prejudice the Defendants." (Id. at 14).

The court held that "the Plaintiffs have failed to show good cause and that

12

the Plaintiffs unduly delayed and were dilatory in filing their amended complaint and in seeking leave from the Court to do so, and because the Defendants would be unduly prejudiced by allowance of the proposed First Amended Complaint, the Court concludes that the Plaintiffs' Motion to Reconsider is due to be denied." (Id.).

To the contrary, the Plaintiffs presented a showing of good cause to the court in its Motion to Reconsider Motion for Leave to Amend Complaint. (Doc. 96). Further, the Appellant asserts the court erred in finding undue delay and dilatory conduct. The record is clear that the Plaintiffs timely filed the First Amended Complaint (Doc. 67) on December 17, 2019, and immediately, on December 18, 2019, Plaintiffs filed their Motion for Leave to File Amended Complaint. (Doc. 69). Additionally, the Appellant asserts the First Amended Complaint will not "unduly" prejudice the Defendants. At this point in the proceedings there is only one remaining Plaintiff. It is not necessary to conduct further discovery for Bennett's added claim of Title VII retaliatory hostile work environment harassment because discovery has already taken place with regards to Title VII retaliation and hostile environment. Certainly, any prejudice to the Defendants is grossly outweighed by the overarching principle to serve justice and allow the Plaintiff's claims to be heard on the merits.

In *Foman v. Davis,* 371 U.S. 178 (1962), the United States Supreme Court has stated that:

13

Rule 15(a) declares that leave to amend **'shall be freely given when justice so requires'**; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, **but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules**.

…

We use the abuse of discretion standard when reviewing a district court's decision on whether to grant a motion for leave to amend the pleadings. The court must grant litigant's motion for leave to amend the pleadings "when justice so requires." Fed.R.Civ.P 15(a).

*Foman* at 182. (internal citation omitted) (emphasis added).

Further, the Eleventh Circuit has stated that under Rule 15(a):

We therefore hold that it was an abuse of discretion for the district court to come to an incorrect timeliness determination and fail to provide a "substantial reason" for denial of the motion to amend.

*Laurie v. Ala. Ct. of Crim. App.*, 256 F.3d 1266, 1276 (11th Cir. 2001).

Plaintiff Bennett proposed to add the theory of retaliatory hostile work environment harassment at Count VIII. (Doc. 67, p.41).

In *Gowski v. Peake,* 682 F.3d 1299 (11th Cir. 2012), the U.S. Eleventh Circuit Court of Appeals addressed the type of conduct giving rise to a retaliatory

14

hostile work environment harassment claim and set forth the test for proving a retaliatory hostile work environment harassment claim. Generally, an adverse employment action involves a discrete act, such as demotion, failure to promote, reduction in pay, suspension, or termination. However, co-worker or supervisory retaliatory harassment against an employee for engaging in statutorily protected activity under Title VII may constitute an adverse employment action for purposes of a Title VII retaliation claim.

In *Gowski*, the Eleventh Circuit recognized a cause of action for retaliatory hostile work environment harassment. After recognizing the cause of action, the appellate court then determined that retaliatory hostile work environment harassment claims would be analyzed under the same framework used by courts for hostile work environment sexual harassment claims.

The court's denial of Plaintiff Bennett's retaliatory hostile work environment harassment claim was an abuse of discretion because of the inconsistency with the spirit of the Federal Rules. Plaintiff Bennett was denied the ability to have all of her claims heard on the merits as justice requires. Justice requires and cries out for allowance of amendment of the Complaint. Bennett urges the court to reverse the trial court with instructions to allow the First Amended Complaint. In the alternative, Bennett requests that the amendment be allowed as it relates to her claims against the Defendants.

## II. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO PLAINTIFF'S RACE DISCRIMINATION CLAIMS UNDER TITLE VII.

The district court erred when it found that Bennett's reassignment did not constitute an actionable adverse action and thereby granted summary judgment as to Bennett's race discrimination claims under Title VII. (Doc 245 at 24).

Bennett was reassigned within W.O. Parmer from guidance counselor to kindergarten teacher. (Doc 245 at 22). In Count IV, she claims that her future job advancement prospects were harmed, that she was set up to fail, and that she was transferred to a less prestigious position that had less student impact. *Id.* She acknowledges that she did not suffer any loss of compensation. *Id.*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq., makes it unlawful for a private employer or a state or local government "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1).

Congress enacted Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, to "assure equality of employment opportunities and to eliminate … dis-criminatory practices and devices" in the workplace. *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 800 (1973). This case involves the meaning of Section 2000e-2(a)(1), "Title VII's core antidiscrimination provision."

*Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53, 61 (2006). Section 2000e-2(a)(1) makes it unlawful for a private employer or a state or local government "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1).

The district court stated that, "[a] qualifying adverse employment action in the Title VII context 'must in some substantial way alter the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect his or her status as an employee. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).'" There must be a serious and material change in employment status, "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Redd v. United Parcel Serv., Inc.*, 615 F. App'x 598, 603 (11th Cir. 2015) (per curiam). (Doc 245 at 15).

The five general principles used by the court in its analysis for determining whether the transfers or reassignments are actionable adverse employment actions were as follows:

> First, purely lateral transfers—transfers that do not involve a demotion in form or substance—do not rise to the level of an actionable adverse employment action. *See Martin v. Eli Lilly & Co.*, 702 F. App'x 952, 958 (11th Cir. 2017) (discussing that purely lateral transfers are not adverse); *Duble v. FedEx Ground Package*

*Sys., Inc.*, 572 F. App'x 889, 895 (11th Cir. 2014) (per curiam) (same); *Hinson v. Clinch Cnty. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000) ("In a Title VII case, a transfer to a different position can be 'adverse' if it involves a reduction in pay, prestige or responsibility."); *Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998) (applying standard in the Americans with Disabilities Act context). (Doc. 245 at 15-16).

Second, transfers that impede an employee's professional growth or advancement may constitute an adverse employment action. *See Hart v. United States Att'y Gen.*, 433 F. App'x 779, 781–82 (11th Cir. 2011) ("Additionally, transfers that are a form of demotion or that disrupt investment in education, training, or seniority may qualify as an adverse employment action."); *Doe*, 145 F.3d at 1453 n.22 (listing missed "employment opportunities" as one factor in determining whether an action was adverse).

Third, increased stress resulting from a transfer is insufficient to make the transfer adverse. *See Barnett v. Athens Reg'l Med. Ctr. Inc.*, 550 F. App'x 711, 714 (11th Cir. 2013) (per curiam) ("The anti-discrimination statutes do 'not guarantee a stress-free working environment'") (quoting *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1233–34 (11th Cir. 2001)).

Fourth, a longer commute resulting from a new position is a mere inconvenience, not rising to adversity. *See Varnedoe v. Brennan*, No. CV418-067, 2021 WL 1115300, at *4 (S.D. Ga. Mar. 2, 2021) ("The fact that the transferee position is inconvenient, for example because it requires a longer commute, is insufficient to make it adverse for Title VII purposes."), *report and recommendation adopted*, No. CV418-067, 2021 WL 1112700 (S.D. Ga. Mar. 23, 2021), *aff'd sub nom. Varnedoe v. Postmaster Gen.*, No. 21-11186, 2022 WL 35614 (11th Cir. Jan. 4, 2022); *Stewart v. Argos Ready Mix, LLC*, No. 3:16-CV-356-MHT-WC, 2016 WL 7238915, at *7 (M.D. Ala. Nov. 1, 2016), *report and recommendation adopted*, No. 3:16CV356-MHT, 2016 WL 7234092 (M.D. Ala. Dec. 14, 2016) (holding that reassignment which increased employee's commute time from five to seven minutes to between thirty and forty minutes was not an adverse employment action); *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1136 (N.D. Ga. 2004) ("[A]n overwhelming number of federal courts have held that a

reassignment or transfer which results in an increased commute, without more, is not objectively serious and tangible enough to meet the threshold of substantiality.").

Fifth, and perhaps most crucial, a plaintiff's subjective belief or personal preference bears little, if any, weight because the reasonable person standard guides the inquiry. *See Duble*, 572 F. App'x at 895 ("The plaintiff's subjective preference of one position over another is generally not relevant to determine whether an action was adverse."); *Howard v. Walgreen Co.*, 605 F.3d 1239, 1245 (11th Cir. 2010) ("Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances."); *Lawson v. Plantation Gen. Hosp., LP.*, 704 F. Supp. 2d 1254, 1269 (S.D. Fla. Mar. 30, 2010); *Richardson v. Jackson*, 545 F. Supp. 2d 1318, 1328 (N.D. Ga. 2008) ("Mere idiosyncrasies of personal preference are not sufficient to state an injury").

(Doc 245 at 15-16).

The district court concluded that Bennett failed to provide sufficient evidence showing that her reassignment within the same school constituted an actionable adverse action. The district court stated that "[h]er subjective and conclusory assertions, like that she was 'set up to fail' or that the position was less prestigious, are insufficient." (Doc. 245 at 22). Further, the court stated that, "Bennett's transfer [reassignment], although a personal setback, did not arise to 'severe professional trauma.' *See Doe*, 145 F.3d at 1453 (holding that transfer did not rise to severe professional trauma)." (Doc. 245 at 23-24).

The district court's application of a heighted standard conflicts with the statute's objectives. Interpreting Section 2000e-2(a)(1) to cover only "significant"

19

or "material" employment actions is atextual and mistaken. "The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to *eliminate* those discriminatory practices and devices" that operate in the workplace. *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 800 (1973) (emphasis added). The district court's interpretation of Section 2000e-2(a)(1) to employment actions that are "similarly significant" to actions such as "terminations, demotion, suspensions without pay, and pay raises or cuts," has no foundation in Title VII's text, structure, or purpose.

"Congress intended to prohibit *all practices in whatever form* which create inequality in employment opportunity due to discrimination." *Franks* v. *Bowman Transp. Co.*, 424 U.S. 747, 763 (1976) (emphasis added). The standard imposed by the district court is contrary to the purpose of Title VII because it allows discriminatory practices so long as they do not rise above a heightened standard that is not in the statute. Section 2000e-2(a)(1)'s requirements, as enacted by Congress, impose appropriate limits for bringing a Title VII anti-discrimination claim. The heighted limits added by the court have no basis in the statutory text, structure, or purpose.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Dated this 7th day of June, 2023.

Respectfully submitted,

Fred D. Gray, Jr.    (ASB-1993-Y65F)
J. Carlton Sims, Jr. (ASB-2020-S77S)

**OF COUNSEL:**

GRAY, LANGFORD, SAPP, MCGOWAN,
   GRAY, GRAY & NATHANSON, P.C.
Post Office Box 830239
Tuskegee, Alabama 36083
(334)727-4830 Telephone
(334)727-5877 Facsimile
fgrayjr@glsmgn.com


J. Carlton Sims, Jr.
LAW OFFICE OF J. CARLTON SIMS, JR.
Post Office Box 373
Montgomery, Alabama 36101
(334)328-2294 Telephone
jcsimslegal@gmail.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(b) because according to the word processing application used to create it, it contains 4668 words, excluding the parts of the brief exempted by Fed R. App. 32(a)(7)(b)(iii).

Dated this 7th day of June, 2023.

**Fred D. Gray, Jr.**
One of the Attorneys for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day electronically filed the foregoing using the court's CM/ECF electronic filing system which will automatically serve a true and correct copy upon the clerk of the court on this the 7th day of June, 2023; and by placing four (4) copies of the same in the United States Mail, with proper postage prepaid, on this the 7th day of June 2023 to the following:

David J. Smith, Clerk
United States Court of Appeals for the Eleventh Circuit
56 Forsyth Street, NW
Atlanta, Georgia 30303

and by placing a copy of the same in the United States Mail, with proper postage prepaid, on this the 7th day of June 2023 to counsel of record as follows:

**James R. Seale, Esq.**
HILL, HILL, CARTER, FRANCO, COLE & BLACK, PC
Post Office Box 116
Montgomery, Alabama 36101-0116

**Lewis S. ("Pete") Hamilton, Esq.**
POWELL & HAMILTON
505 E Commerce St.
Greenville, Alabama 36037

**Alicia F. Bennett, Esq.**
HILL, HILL, CARTER, FRANCO, COLE & BLACK
100 Corporate Parkway, Suite 325
Birmingham, Alabama 35242

**John Marsh, Esq.**
**Allison Alford Ingram, Esq.**
BALL, BALL, MATTHEWS & NOVAK, P.A.
Post Office Box 2148
Montgomery, Alabama 36102-2148

OF COUNSEL