No. 23-10186-A

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

REGINA BENNETT,

Plaintiff-Appellant

v.

BUTLER COUNTY BOARD OF EDUCATION, *et al.*,

Defendants-Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

_____

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
IN SUPPORT OF APPELLANT AND URGING REVERSAL ON THE ISSUE
ADDRESSED HEREIN

_____

GWENDOLYN YOUNG REAMS
 Acting General Counsel

JENNIFER S. GOLDSTEIN
 Associate General Counsel
DARA S. SMITH
 Assistant General Counsel
STEVEN WINKELMAN
 Attorney
 Equal Employment Opportunity
  Commission
 Office of General Counsel
 131 M Street, NE, 5th Floor
 Washington, D.C.  20507
 (202) 921-2564
 Steven.Winkelman@eeoc.gov

KRISTEN CLARKE
 Assistant Attorney General

TOVAH R. CALDERON
ANNA M. BALDWIN
 Attorneys
 Department of Justice
 Civil Rights Division
 Appellate Section
 Ben Franklin Station
 P.O. Box 14403
 Washington, D.C.  20044-4403
 (202) 305-4278
 Anna.Baldwin@usdoj.gov

*Bennett* v. *Butler Cnty. Bd. of Educ., et al.*, No. 23-10186-A

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In accordance with Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, the

United States as amicus certifies that, in addition to those identified in the brief

filed by appellant, the following persons may have an interest in the outcome of

this case:

Baldwin, Anna M., Department of Justice, counsel for amicus curiae
United States;

Calderon, Tovah R., Department of Justice, counsel for amicus curiae
United States;

Clarke, Kristen, Department of Justice, counsel for amicus curiae United
States;

Goldstein, Jennifer S., Equal Employment Opportunity Commission,
counsel for amicus curiae United States;

Reams, Gwendolyn Young, Equal Employment Opportunity Commission,
counsel for amicus curiae United States;

Smith, Dara S., Equal Employment Opportunity Commission, counsel for
amicus curiae United States;

Winkelman, Steven, Equal Employment Opportunity Commission, counsel
for amicus curiae United States.

*Bennett* v. *Butler Cnty. Bd. of Educ., et al.*, No. 23-10186-A

The United States certifies that no publicly traded company or corporation has an interest in the outcome of this appeal.

s/ Anna M. Baldwin
ANNA M. BALDWIN
 Attorney

# TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ............................................................. C-1

INTEREST OF THE UNITED STATES ................................................ 1

STATEMENT OF THE ISSUE ............................................................. 3

STATEMENT OF THE CASE .............................................................. 3

SUMMARY OF ARGUMENT ............................................................. 5

ARGUMENT

      ALL DISCRIMINATORY JOB TRANSFERS ARE ACTIONABLE UNDER SECTION 703(A)(1) OF TITLE VII BECAUSE THEY AFFECT THE "TERMS" AND "CONDITIONS" OF EMPLOYMENT ..... 7

      A.   *Because There Is No More Fundamental "Term" Or "Condition" Of Employment Than The Job Position Itself, All Discriminatory Job Transfers Fall Within Section 703(a)(1)'s Scope* .......................... 8

      B.   *Section 703(a)(1) Does Not Require Plaintiffs To Make An Additional, Atextual Showing Of "Serious" Or "Material" Harm* ... 11

CONCLUSION .................................................................................. 22

CERTIFICATE OF COMPLIANCE

# TABLE OF CITATIONS

**CASES:**                                                                  **PAGE**

*Bostock* v. *Clayton Cnty.*, 140 S. Ct. 1731 (2020)................................8, 19

*Brown* v. *Brody*, 199 F.3d 446 (D.C. Cir. 1999) ....................................20

*Burlington Indus., Inc.* v. *Ellerth*, 524 U.S. 742 (1998) ..................................*passim*

*Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53 (2006)............... 14, 16-18

*Chambers* v. *District of Columbia*, 988 F.3d 497 (D.C. Cir. 2021) .......................20

*\*Chambers* v. *District of Columbia*,
    35 F.4th 870 (D.C. Cir. 2022) (en banc) ................................*passim*

*Davis* v. *Town of Lake Park*, 245 F.3d 1232 (11th Cir. 2001) .....................6, 14, 19

*EEOC* v. *Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) ........................18

*Faragher* v. *City of Boca Raton*, 524 U.S. 775 (1998)...........................................12

*Franks* v. *Bowman Transp. Co.*, 424 U.S. 747 (1976) ...........................................20

*Gupta* v. *Florida Bd. of Regents*, 212 F.3d 571 (11th Cir. 2000)...........................11

*Hamilton* v. *Dallas Cnty.*,
    42 F.4th 550 (5th Cir. 2022) (pending reh'g en banc) .................................21

*Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17 (1993) ....................................................12

*Heckler* v. *Mathews*, 465 U.S. 728 (1984).............................................................18

*Hinson* v. *Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821 (11th Cir. 2000)..........5, 19

*Keene Corp.* v. *United States*, 508 U.S. 200 (1993)................................................13

*Lewis* v. *City of Chi.*, 560 U.S. 205 (2010)...............................................................8

**CASES (continued):**                                                                                      **PAGE**

*Meritor Sav. Bank, FSB* v. *Vinson*, 477 U.S. 57 (1986) ............................ 6, 8, 11-12

*Monaghan* v. *Worldpay US, Inc.*, 955 F.3d 855 (11th Cir. 2020) ...................... 8, 18

*Ortiz-Diaz* v. *United States Dep't of Hous. & Urban Dev.*,
      867 F.3d 70 (D.C. Cir. 2017).............................................................................10

*Redd* v. *United Parcel Serv., Inc.*, 615 F. App'x 598 (11th Cir. 2015)...............5, 14

*Ricci* v. *DeStefano*, 557 U.S. 557 (2009)...................................................................17

*Taniguchi* v. *Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012) ........................................9

*\*Threat* v. *City of Cleveland*, 6 F.4th 672 (6th Cir. 2021) ..........................10, 19, 21

*Trans World Airlines, Inc.* v. *Hardison*, 432 U.S. 63 (1977) ..............................7, 20

**STATUTES:**

Civil Rights Act of 1964 (Title VII)
      42 U.S.C. 2000e *et seq.* .....................................................................................1
      42 U.S.C. 2000e-2(a)(1) .............................................................................*passim*
      42 U.S.C. 2000e-2(a)(2) ................................................................................13
      42 U.S.C. 2000e-2(m)....................................................................................19
      42 U.S.C. 2000e-3(a) .....................................................................................16
      42 U.S.C. 2000e-5(a) .......................................................................................1
      42 U.S.C. 2000e-5(f)(1)...................................................................................1
      42 U.S.C. 2000e-16(a)......................................................................................8

**RULE:**

Fed. R. App. P. 29(a) .............................................................................................. 2

**MISCELLANEOUS:**

EEOC Compliance Manual (2006)......................................................................... 11

- iii -

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

————————————

No. 23-10186-A

REGINA BENNETT,

Plaintiff-Appellant

v.

BUTLER COUNTY BOARD OF EDUCATION, *et al.*,

Defendants-Appellees

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

————————————

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
IN SUPPORT OF APPELLANT AND URGING REVERSAL ON THE ISSUE
ADDRESSED HEREIN

————————————

**INTEREST OF THE UNITED STATES**

The United States has a substantial interest in the proper interpretation of
Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*  The Attorney
General and the Equal Employment Opportunity Commission (EEOC) share
enforcement responsibility under Title VII.  See 42 U.S.C. 2000e-5(a) and (f)(1).

This case presents an important question regarding the scope of actionable
discrimination under Section 703(a)(1) of Title VII.  In response to the Supreme

Court's request for the views of the Solicitor General, the United States recently filed amicus briefs in two pending cases concerning the scope of Section 703(a)(1)'s prohibition of discrimination in the "terms, conditions, or privileges of employment."  See U.S. Amicus Br., *Davis* v. *Legal Servs. Ala., Inc.*, No. 22-231 (filed May 18, 2023); U.S. Amicus Br., *Muldrow* v. *City of St. Louis*, No. 22-193 (filed May 18, 2023).  In both cases, the United States is urging the Supreme Court to grant certiorari to correct a widespread, atextual misinterpretation of Section 703(a)(1), including by this Court.[1]  The United States previously addressed Section 703(a)(1)'s scope in two other Supreme Court briefs.  See U.S. Br. in Opp'n, *Forgus* v. *Esper*, 141 S. Ct. 234 (2020) (No. 18-942); U.S. Amicus Br., *Peterson* v. *Linear Controls, Inc.*, 140 S. Ct. 2841 (2020) (No. 18-1401).  And the United States has filed similar amicus briefs throughout the courts of appeals.  See U.S. Amicus Br. at 2, *Naes* v. *City of St. Louis*, No. 22-2021 (8th Cir. filed Aug. 12, 2022) (citing briefs).

The United States files this brief under Federal Rule of Appellate Procedure 29(a).

---

[1] *Davis* arises from this circuit and involves a paid suspension, while *Muldrow* arises from the Eighth Circuit and concerns a lateral job transfer.  The United States' brief in *Davis* can be found at https://www.justice.gov/sites/default/files/briefs/2023/05/22/22-331_davis_v._legal_servs._alabama.pdf, and the United States' brief in *Muldrow* can be found at https://www.justice.gov/sites/default/files/briefs/2023/05/22/22-193_muldrow_v._city_of_st._louis_cvsg.pdf.

## STATEMENT OF THE ISSUE

Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides, in

relevant part, that:

> [i]t shall be an unlawful employment practice for an employer  *  *  *
> to fail or refuse to hire or to discharge any individual, or otherwise to
> discriminate against any individual with respect to his compensation,
> *terms, conditions, or privileges of employment*, because of such
> individual's race, color, religion, sex, or national origin[.]

42 U.S.C. 2000e-2(a)(1) (emphasis added).

At issue in this appeal is whether a job transfer, allegedly made on the basis

of the employee's race, may constitute discrimination "with respect to  *  *  *

terms, conditions, or privileges of employment" under Section 703(a)(1), even

where there is no change in benefits or salary.[2]  42 U.S.C. 2000e-2(a)(1)

## STATEMENT OF THE CASE

1.  Plaintiff Regina Bennett was one of 20 current and former employees of

the Butler County Board of Education who was transferred from one job position

to another in 2018 as part of a restructuring process by the Board's newly hired

district superintendent.  Doc. 245, at 1.[3]  Bennett was reassigned from serving as a

guidance counselor to working as a kindergarten teacher at the same school.  Doc.

---

[2]  The United States takes no position on the merits of plaintiff's claim or on
any other issues presented in this appeal.

[3]  "Doc. __, at __" refers to the docket entry and page number of documents
filed on the district court's docket.

245, at 5.  Bennett's compensation did not change, but she asserted that her job advancement prospects were harmed and that her new position was less prestigious and had less student impact.  Doc. 245, at 5-6.

Bennett, along with other plaintiffs whose claims have been resolved, filed suit against the Butler County Board of Education, its board members, and its superintendent, alleging violations of Title VII and the Fourteenth Amendment. Doc. 245, at 1, 8-9.  As relevant here, Bennett alleged that defendants discriminated against her based on her race in violation of Section 703(a)(1) by transferring her from her position as guidance counselor to serve as a kindergarten teacher.  Defendants moved for summary judgment, arguing that Bennett failed to show that she was subjected to an "adverse employment action," because she "did not suffer a loss of pay or benefits and  *  *  *  has offered no objective evidence that being reassigned" caused a loss of advancement opportunities or prestige. Doc. 245, at 22.

2.  The district court granted summary judgment in favor of the defendants. The court began its analysis of the allegedly discriminatory transfers by stating that a "qualifying adverse employment action" under Section 703(a)(1) must cause a "serious and material change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Doc. 245, at 15 (internal quotation

marks omitted) (quoting *Redd* v. *United Parcel Serv., Inc.*, 615 F. App'x 598, 603 (11th Cir. 2015)).  The court further stated that "purely lateral transfers—transfers that do not involve a demotion in form or substance—do not rise to the level of an actionable adverse employment action."  Doc. 245, at 15.  The court cited several of this Court's past decisions, including *Hinson* v. *Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821 (11th Cir. 2000), for the proposition that "a transfer to a different position can be 'adverse' if it involves a reduction in pay, prestige or responsibility."  Doc. 245, at 16 (quoting *Hinson*, 231 F.3d at 829).

The district court concluded that Bennett failed to establish that she suffered an "adverse employment action" because she offered only "subjective and conclusory assertions" that her new position as a kindergarten teacher was less prestigious than her prior position as a guidance counselor.  Doc. 245, at 22-23.

3.  Bennett timely appealed.  Doc. 348.

## SUMMARY OF ARGUMENT

This Court should join the D.C. Circuit in reconsidering its Title VII precedents and hold that all discriminatory job transfers and denials of requested transfers are actionable under Section 703(a)(1) of Title VII because they affect an employee's "terms" and "conditions" of employment.  42 U.S.C. 2000e-2(a)(1).  This conclusion is dictated by Section 703(a)(1)'s plain text.  Title VII does not define the phrase "terms, conditions, or privileges of employment," and so that

- 6 -

phrase is given its ordinary meaning.  There is no more fundamental "term" or "condition" of employment than the employee's formal job position.  As such, forcing or denying an employee's job transfer on the basis of a protected characteristic falls within Section 703(a)(1)'s scope of prohibited discrimination.

The district court's conclusion that "transfers that do not involve a demotion in form or substance [] do not rise to the level of an actionable adverse employment action" (Doc. 245, at 15), reflects current circuit precedent limiting the scope of Section 703(a)(1) to "significant[]" discriminatory actions.  *E.g.*, *Davis* v. *Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001).  That precedent is wrong and should be reconsidered.  As the D.C. Circuit recently held, a requirement to prove harm beyond being subjected to a discriminatory transfer is unsupported by Section 703(a)(1)'s text, structure, and purpose.  *Chambers* v. *District of Columbia*, 35 F.4th 870, 874 (D.C. Cir. 2022) (en banc).  Moreover, the Supreme Court has repeatedly stressed that the phrase "terms, conditions, or privileges of employment," 42 U.S.C. 2000e-2(a)(1), "is an expansive concept" with a broad sweep.  *Meritor Sav. Bank, FSB* v. *Vinson*, 477 U.S. 57, 66 (1986) (citation omitted).  This Court's precedent purporting to apply the Supreme Court's decision in *Burlington Industries, Inc.* v. *Ellerth*, 524 U.S. 742 (1998), to limit the scope of Section 703(a)(1) to only "significant" or "tangible" discriminatory actions misunderstands *Ellerth*'s holding and should be reconsidered.

In addition, it is unnecessary to import an atextual, "significant" or "material" harm requirement to ensure that Section 703(a)(1) is not stretched to cover ordinary workplace disputes. Title VII's text already imposes appropriate limits on Section 703(a)(1) discrimination claims by requiring that they be related to the workplace *and* that they be based on race, color, sex, religion, or national origin. A requirement to prove "significant" or "material" harm departs from Section 703(a)(1)'s text and permits brazen acts of discrimination—including openly transferring employees based on their race or sex—so long as there is no proof of a worsened working environment or of economic harm. That result is at odds with Title VII's core purpose of "*eliminating* discrimination in employment." *Trans World Airlines, Inc.* v. *Hardison*, 432 U.S. 63, 71 (1977) (emphasis added). Under Section 703(a)(1), and absent affirmative defenses not at issue in this case, no amount of race, sex, religion, or national origin discrimination that affects the terms, conditions, or privileges of employment is lawful.

## ARGUMENT

## ALL DISCRIMINATORY JOB TRANSFERS ARE ACTIONABLE UNDER SECTION 703(A)(1) OF TITLE VII BECAUSE THEY AFFECT THE "TERMS" AND "CONDITIONS" OF EMPLOYMENT

Section 703(a)(1) makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual

with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. 2000e-2(a)(1).[4]  Bennett does not allege that the Board made a "hir[ing]" or "discharge" decision based on her race, nor does she contend that race played a role in her "compensation."  *Ibid.*  Rather, the question in this appeal is whether forcing a job transfer to a position that carries the same salary, benefits, and responsibility, allegedly because of race, involves discrimination "with respect to * * * terms, conditions, or privileges of employment."

A.    *Because There Is No More Fundamental "Term" Or "Condition" Of Employment Than The Job Position Itself, All Discriminatory Job Transfers Fall Within Section 703(a)(1)'s Scope*

The starting point in this case, as always, is "the language of" the statute. *Meritor Sav. Bank, FSB* v. *Vinson*, 477 U.S. 57, 64 (1986); see also *Bostock* v. *Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020) ("After all, only the words on the page constitute the law adopted by Congress and approved by the President.").  In interpreting Title VII's text, the "charge is to give effect to the law Congress enacted."  *Lewis* v. *City of Chi.*, 560 U.S. 205, 217 (2010).

---

[4]  Section 703(a)(1) applies to private employers as well as local public employers such as the Board.  A separate but related provision of Title VII provides that federal-sector "personnel actions * * * shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. 2000e-16(a).

- 9 -

Congress did not define the phrase "terms, conditions, or privileges of employment" in Title VII. "When a term goes undefined in a statute," courts give "the term its ordinary meaning." *Taniguchi* v. *Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). It is undisputed that Bennett was subject to a reassignment of her job position—from guidance counselor to kindergarten teacher. Formally transferring Bennett from one position to another resulted in changing her work responsibilities and the persons with whom she worked. Under the ordinary meaning of the controlling statutory language, such changes plainly implicate the "terms" and "conditions" of employment. 42 U.S.C. 2000e-2(a)(1).

As the United States recently expressed to the Supreme Court, "transferring an employee from one job to another falls within the heartland of employer actions that affect an employee's 'terms' or 'conditions' of employment as those words are ordinarily understood." U.S. Br. at 7, *Muldrow*, *supra*, (No. 22-193). Indeed, "it is difficult to imagine a more fundamental term or condition of employment than the position itself." *Chambers* v. *District of Columbia*, 35 F.4th 870, 874 (D.C. Cir. 2022 (en banc) (quoting U.S. Br. in Opp'n at 13, *Forgus*, *supra*, (No. 18-942))). The en banc court in *Chambers* was addressing the same issue presented in this appeal—namely, whether all discriminatory job transfers are actionable under Section 703(a)(1), or whether job transfers, even if motivated by discriminatory animus, are only actionable if they result in "objectively tangible harm." *Id.* at 872

- 10 -

(citation omitted).  The D.C. Circuit overturned its prior precedent to hold that "the straightforward meaning of the statute  *  *  *  emphatic[ally]" prohibits all discriminatory transfers, even those that do not result in changes in benefits, salary, or worsened working conditions.  *Id.* at 874.  *Chambers* agreed with what then-Judge Kavanaugh had previously explained:  under the plain language of Section 703(a)(1), transferring or denying an employee's transfer, on the basis of a protected characteristic, "plainly constitutes discrimination with respect to 'compensation, terms, conditions, or privileges of employment' in violation of Title VII."  *Ortiz-Diaz* v. *United States Dep't of Hous. & Urban Dev.*, 867 F.3d 70, 81 (D.C. Cir. 2017) (Kavanaugh, J., concurring) (citation omitted).

Just as a "shift schedule is a term of employment," *Threat* v. *City of Cleveland*, 6 F.4th 672, 677 (6th Cir. 2021), so too is the formal position that the employee holds.  The "when," "where," and "what" of a job—when and with whom the employee is assigned to work, at what location, the position they hold and particular work that the employee is required to do—all fall squarely within the "terms" and "conditions" of employment.  See *ibid.* ("If the words of Title VII are our compass, it is straightforward to say that a shift schedule  *  *  *  counts as a term of employment.  *  *  *  How could the *when* of employment not be a *term* of employment?").  A typical employee asked to describe his "terms" or "conditions  *  *  *  of employment," 42 U.S.C. 2000e-2(a)(1), would almost

surely mention where he works and what he does.  See also EEOC Compliance

Manual § 15-VII(B)(1) (2006) ("Work assignments are part-and-parcel of

employees' everyday terms and conditions of employment.").

In granting judgment to the defendants on Bennett's Title VII discrimination

claim, the district court did not grapple with Section 703(a)(1)'s text but instead

concluded that Bennett failed to establish that she suffered an "adverse

employment action" because she could not prove a "serious and material change"

in her employment status, such as a loss of compensation, prestige, or advancement

opportunities.  Doc. 245, at 15, 22-23.  But as discussed further below, the

requirement to prove harm beyond being subjected to a discriminatory transfer is a

"judicial gloss that lacks any textual support" from Title VII.  *Chambers*, 35 F.4th

at 875.  This case presents this Court with an opportunity to join the D.C. Circuit

and return to Title VII's plain text in defining the scope of discriminatory conduct

prohibited by Section 703(a)(1).

B.    *Section 703(a)(1) Does Not Require Plaintiffs To Make An Additional,
      Atextual Showing Of "Serious" Or "Material" Harm*

1.  The phrase "terms, conditions, or privileges of employment," 42 U.S.C.

2000e-2(a)(1), "is an expansive concept" with a broad sweep, *Meritor*, 477 U.S. at

66 (citation omitted).  This language "evinces a congressional intent to strike at the

entire spectrum of disparate treatment" in employment.  *Gupta* v. *Florida Bd. of

Regents*, 212 F.3d 571, 582 (11th Cir. 2000) (internal quotation marks omitted)

(quoting *Meritor*, 477 U.S. at 64). Indeed, the Supreme Court has "repeatedly made clear that  *  *  *  the scope of the prohibition" against discrimination in Section 703(a)(1) "is not limited to 'economic' or 'tangible' discrimination." *Faragher* v. *City of Boca Raton*, 524 U.S. 775, 786 (1998) (quoting *Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

The district court concluded that Bennett failed to establish that she suffered an "adverse employment action" because she could not prove a "serious and material change" in her employment status, such as a loss of compensation, prestige, or advance opportunities. Doc. 245, at 15, 22-23. But that standard is fundamentally flawed. Section 703(a)(1)'s plain text contains no requirement that an employee alleging discrimination in the terms or conditions of employment make a separate showing of serious or material harm, in addition to having been subjected to discrimination in the terms, conditions, or privileges of employment. Indeed, requiring proof of harm beyond a discriminatory reassignment is unsupported by Title VII's text, structure, and purpose. As Judges Ginsburg and Tatel recently explained for the D.C. Circuit sitting en banc, "[o]nce it has been established that an employer has discriminated against an employee with respect to that employee's 'terms, conditions, or privileges of employment' because of a protected characteristic, the analysis is complete." *Chambers*, 35 F.4th at 874-875.

- 13 -

If Congress had intended that Section 703(a)(1) reach only discriminatory conduct that results in a certain level of harm, it could have said so. Title VII's very next subsection—Section 703(a)(2)—makes it unlawful for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or *otherwise adversely affect his status as an employee*, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(2) (emphasis added). "Where Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely." *Keene Corp.* v. *United States*, 508 U.S. 200, 208 (1993) (alteration in original and citation omitted). Thus, contrary to the decision below, Bennett's allegedly discriminatory job transfer is actionable under Section 703(a)(1) even though she "did not suffer a loss of pay or benefits" or prove that her transfer caused a "deprivation of future job advancement opportunities or loss of prestige." Doc. 245, at 22.

2. The district court imposed its "serious and material change" requirement (Doc. 245, at 15) based in part on a longstanding misreading in this Court's precedents of the Supreme Court's decision in *Burlington Industries, Inc.* v. *Ellerth*, 524 U.S. 742 (1998).

- 14 -

The district court cited an unpublished Eleventh Circuit decision for the proposition that Section 703(a)(1)'s scope is limited to actions that cause a "serious and material change in employment status, 'such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  Doc. 245, at 15 (quoting *Redd* v. *United Parcel Serv., Inc.*, 615 F. App'x 598, 603 (11th Cir. 2015)).  *Redd* took this requirement from *Davis* v. *Town of Lake Park*, 245 F.3d 1232 (11th Cir. 2001).  See *Redd*, 615 F. App'x at 603.  And *Davis* read *Ellerth* as "suggest[ing] that some kind of significantly adverse employment action is necessary to prove an employer's Title VII liability."  *Davis,* 245 F.3d at 1239 (citing *Ellerth*, 524 U.S. at 760-761).  But that is not correct.

*Ellerth* "did not discuss the scope of" Section 703(a)(1), Title VII's "general antidiscrimination provision."  *Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53, 65 (2006).  Instead, *Ellerth* involved a claim against an employer alleging that a supervisor had created a hostile work environment through "severe or pervasive" sexual harassment of an employee.  524 U.S. at 752.  The question in *Ellerth* asked under what circumstances "an employer has vicarious liability" for sexual harassment by a supervisor.  524 U.S. at 754.  After reviewing agency-law principles, the Supreme Court explained that there are two paths under which vicarious liability must be imputed.  First, vicarious liability exists, with no

- 15 -

affirmative defense, "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Id.* at 764-765.  The Court explained that a "tangible employment action" constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.  *Id.* at 765.  Such actions necessarily "require[] an official act of the enterprise," and therefore support automatic imputation of vicarious liability on the employer.  *Id.* at 761-762.  Second, *Ellerth* held that an employer is liable for a hostile work environment created by a supervisor even in the *absence* of any tangible employment action, unless the employer can establish the "affirmative defense" that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and that the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer."  *Id.* at 764-765.

*Ellerth*'s discussion of "significant" changes to employment status occurred in the context of defining a path for imposing vicarious liability, not in describing the elements of a Section 703(a)(1) claim.  See 524 U.S. at 761.  Indeed, *Ellerth*'s "tangible employment action" path for automatically imputing vicarious liability to an employer in cases involving supervisory harassment says nothing about the meaning or scope of the phrase "terms, conditions, or privileges of employment" in

Section 703(a)(1).  Instead, the Supreme Court has explicitly refused to endorse using the tangible-employment-action standard to define or limit the substantive scope of discrimination claims brought under Section 703(a)(1).  See *id.* at 761 (observing that the concept of a "tangible employment action appears in numerous [discrimination] cases in the Courts of Appeals," and, "[w]ithout endorsing the specific results of those decisions," determining it "prudent to import the concept" only for "resolution of the vicarious liability issue").  Contrary to this Court's understanding in *Davis*, *Ellerth* provides no support for limiting Section 703(a)(1) to prohibit discrimination only with respect to "significant" or "material" changes in the terms or conditions of employment.

3.  The Supreme Court's decision in *White* holding that *retaliation* claims under Section 704(a) of Title VII, 42 U.S.C. 2000e-3(a), may be based only on actions "that a reasonable employee would have found  *  *  *  materially adverse," 548 U.S. at 68, likewise provides no support for the standard applied below. Section 704(a) makes it an "unlawful employment practice for an employer to discriminate against  *  *  *  any individual  *  *  *  because he has opposed any practice made an unlawful employment practice by this [title]."  42 U.S.C. 2000e-3(a).  "Unlike the antidiscrimination provision, the antiretaliation provision is not expressly limited to actions affecting the terms, conditions, or privileges of employment."  *Chambers*, 35 F.4th at 876.  As such, the Supreme Court in *White*

adopted a limiting principle for retaliation claims.  The Supreme Court explained that because it is "important to separate significant from trivial harms," 548 U.S. at 68, only a retaliatory act that is "materially adverse" to the plaintiff is actionable under Section 704(a), *id.* at 67-68.

Because Section 703(a)(1) already "tether[s] actionable behavior to that which affects an employee's 'terms, conditions, or privileges of employment,'" a further, court-created limiting principle for Title VII's anti-discrimination provision is unnecessary. *Chambers*, 35 F.4th at 877.  As already explained, Section 703(a)(1)'s plain language delineates the scope of prohibited conduct.  Under the statutory text, no amount of race, sex, religion, or national origin discrimination that affects the terms, conditions, or privileges of employment is lawful (absent affirmative defenses that are not at issue in this appeal).  That is because, unlike Section 704(a), which protects individuals based on their actions, Section 703(a)(1) works to "prevent injury to individuals based on who they are." *White*, 548 U.S. at 63.  To hold otherwise and conclude that Section 703(a)(1) prohibits only decisions that cause a certain level of adversity would undermine "the important purpose of Title VII—that the workplace be an environment free of discrimination." *Ricci* v. *DeStefano*, 557 U.S. 557, 580 (2009).

4.  This Court has previously reasoned that the requirement to prove a "significant" adverse employment action is necessary to distinguish between

- 18 -

"substantial" and "[t]rivial slights." *Monaghan* v. *Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020). But no such atextual "significance" standard is necessary to screen out trivial harms. That is so because an employee who can show discriminatory treatment in her terms, conditions, or privileges of employment on the basis of race, color, religion, sex, or national origin has necessarily been subjected to meaningful injury. Cf. *Heckler* v. *Mathews*, 465 U.S. 728, 739-740 (1984) (recognizing the "serious noneconomic injuries" suffered by those who are "personally denied equal treatment solely because of their membership in a disfavored group").

Indeed, Section 703(a)(1)'s limits come from its statutory text, not from "add[ing] words to the law to produce what is thought to be a desirable result." *EEOC* v. *Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015). And Section 703(a)(1)'s text already limits its scope in two important ways. First, the phrase "with respect to * * * compensation, terms, conditions, or privileges of employment," 42 U.S.C. 2000e-2(a)(1), makes clear that Section 703(a)(1) "protects an individual only from *employment-related* discrimination." *White*, 548 U.S. at 61 (emphasis added). Second, Section 703(a)(1) requires proof that an employer "discriminate[d] * * * *because of*" a protected trait. 42 U.S.C. 2000e-2(a)(1) (emphasis added); see also 42 U.S.C. 2000e-2(m) (providing that a violation also may be established where a plaintiff "demonstrates that race, color,

religion, sex, or national origin was a motivating factor"). Thus, a plaintiff must prove that her employer intentionally treated her "worse than others who are similarly situated" on the basis of a prohibited characteristic. *Bostock*, 140 S. Ct. at 1740. Taken together, these requirements ensure that a plaintiff must do more than simply allege unfavorable treatment to have an actionable claim. See *Threat*, 6 F.4th at 680 (concluding that it is unnecessary to require proof of material adversity to ensure that Section 703(a)(1) is not turned "into a 'general civility code' that federal courts will use to police the pettiest forms of workplace conduct" (citation omitted)).

This Court's requirement that plaintiffs prove a "significantly adverse" employment action, see *Davis*, 245 F.3d at 1239, allows for untenable results. Applying this standard, the district court explained that "purely lateral transfers— transfers that do not involve a demotion in form or substance—do not rise to the level of an actionable adverse employment action." Doc. 245, at 15 (citing *Hinson* v. *Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000)). But this atextual gloss would allow employers to engage in brazen acts of discrimination— openly transferring employees on the basis of race or sex—so long as there is no further showing of worsened working conditions, promotion prospects, or other "serious" or "material" harm. That result is contrary to Title VII's core purposes. By prohibiting discrimination relating to the terms, conditions, or privileges of

employment, "Congress intended to prohibit *all practices in whatever form* which create inequality in employment opportunity due to discrimination." *Franks* v. *Bowman Transp. Co.*, 424 U.S. 747, 763 (1976) (emphasis added). "The emphasis of both the language and the legislative history of the statute is on *eliminating* discrimination in employment." *Trans World Airlines, Inc.* v. *Hardison*, 432 U.S. 63, 71 (1977) (emphasis added).

This Court should join other circuits that have recently revisited their Title VII precedents and hold that Section 703(a)(1) prohibits discrimination as to all "terms," "conditions," or "privileges" of employment and is not limited to prohibiting only "significant" or "material" discriminatory employment actions. Again, the en banc D.C. Circuit recently overturned its prior, atextual "objectively tangible harm" requirement for Section 703(a)(1) claims. See *Chambers*, 35 F.4th at 872 (overruling *Brown* v. *Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)). The panel that originally heard *Chambers* issued a separate concurrence stating that "statutory text, Supreme Court precedent, and Title VII's objectives make clear that employers should never be permitted to transfer an employee or deny an employee's transfer request merely because of that employee's race, color, religion, sex, or national origin." *Chambers* v. *District of Columbia*, 988 F.3d 497, 506 (D.C. Cir. 2021) (Tatel and Ginsburg, JJ., concurring). That concurrence urged the court to rehear the case en banc "to correct this clear legal error" that

allowed employers to make such transfers "so long as the employee suffers no 'tangible harm.'" *Ibid.* Similarly, the en banc Fifth Circuit is currently reconsidering the restrictive "ultimate employment decision" standard that it applies to Section 703(a)(1) claims. See *Hamilton* v. *Dallas Cnty.*, No. 21-10133 (5th Cir., argued Jan. 24, 2023). The panel initially hearing *Hamilton* urged rehearing en banc in order "to achieve fidelity to the text of Title VII." *Hamilton* v. *Dallas Cnty.*, 42 F.4th 550, 557 (5th Cir. 2022); see also *Threat*, 6 F.4th at 677-681 (interpreting prior Sixth Circuit precedent to conform to the text of Title VII). The United States respectfully urges this Court to likewise act and bring its precedent in line with the requirements of Section 703(a)(1)'s text.

# CONCLUSION

The United States respectfully urges this Court to reconsider its precedent limiting Section 703(a)(1)'s scope to only "significant" or "material" discriminatory employment actions and instead hold that the statute's plain text prohibits discrimination as to all "terms," "conditions," or "privileges" of employment, including all job transfers based on protected characteristics.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
  Acting General Counsel

JENNIFER S. GOLDSTEIN
  Associate General Counsel
DARA S. SMITH
  Assistant General Counsel
STEVEN WINKELMAN
  Attorney
  Equal Employment Opportunity
  Commission
  Office of General Counsel
  131 M Street, NE, 5th Floor
  Washington, D.C.  20507
  (202) 921-2564
  Steven.Winkelman@eeoc.gov

KRISTEN CLARKE
  Assistant Attorney General

s/ Anna M. Baldwin
TOVAH R. CALDERON
ANNA M. BALDWIN
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 305-4278
  Anna.Baldwin@usdoj.gov

**CERTIFICATE OF COMPLIANCE**

I certify, pursuant to Federal Rule of Appellate Procedure 32(g):

(1) this brief complies with Federal Rule of Appellate Procedure 29(a)(5) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), it contains 4,715 words according to the word processing program used to prepare the brief.

(2) this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365, in 14-point Times New Roman font.

s/ Anna M. Baldwin
ANNA M. BALDWIN
Attorney

Date:  June 14, 2023