# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

Docket No.  23-10186-A

---

REGINA BENNETT,

*Appellant*

v.

BUTLER COUNTY BOARD OF EDUCATION; LINDA HAMILTON; MICKEY JONES; MICHAEL NIMMER; LOIS ROBINSON; BRANDON SELLERS;  in their Official and/or Individual capacities as members of the Butler County Board of Education; JOHN STRYCKER in his individual capacity; and JOSEPH EILAND in his Official capacity as Superintendent of Education for the Butler County Board of Education,

*Appellees*

---

On appeal from a Final Order of the District Court, Middle District of Alabama
District Court Case No. 2:18-cv-1061-RAH-JTA

---

## BRIEF OF APPELLEES

---

John W. Marsh
Allison Alford Ingram
Ball, Ball, Matthews & Novak, P.A.
Post Office Box 2148
445 Dexter Ave., Ste. 9045 (36104)
Montgomery, AL  36102-2148
(334) 387-7680
jmarsh@ball-ball.com
ala@ball-ball.com
*Counsel for Appellees John Strycker
and Joseph Eiland*

Alicia F. Bennett
James R. Seales
Hill, Hill, Carter, Franco,
Cole & Black, P.C.
31 Inverness Center Pkwy., Ste. 120
Birmingham, Alabama 35242
(334) 263-5969
jrs@hillhillcarter.com
abennette@hillhillcarter.com
*Counsel for Appellees
Butler County Board of Education,
Mickey Jones, Michael Nimmer,
Lois Robinson, Brandon Sellers, and
Linda Hamilton*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

A.    Pursuant to Federal Rule of Appellate Procedure 26.1 and the Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Appellees Butler County Board Of Education, Linda Hamilton, Mickey Jones, Michael Nimmer, Lois Robinson, Brandon Sellers, John Strycker and Joseph Eiland submit the following list of persons or entities which, upon information and belief of the undersigned attorneys for the Appellees who  have or may have an interest in the outcome of this case:

Adams, Hon. Jerusha T., United States Magistrate Judge, Middle District of Alabama

Alabama Education Association

Alabama Trust for Boards of Education

Arrington, Monica, Former Counsel for Plaintiff/Appellant Regina Bennett

Bell, Shawnda, Plaintiff

Bennett, Alicia, Counsel for Defendants/Appellees Butler County Board of Education and Board Members, Linda Hamilton, Mickey Jones, Michael Nimmer, Lois Robinson and Brandon Sellers

Bennett, Regina M., Plaintiff/Appellant

Butler County Board of Education, Defendant/Appellee

Calloway, Charles E., Counsel for Plaintiff/Appellant Regina Bennett

Eiland, Joseph, Defendant/Appellee, current Superintendent of Education for the Butler County Board of Education

Gray, Jr., Fred D., Counsel for Plaintiff/Appellant Regina Bennett

Gray, Stanley F., Counsel for Plaintiff/Appellant Regina Bennett

Hamilton, Linda, Defendant/Appellee, Member of the Butler County Board of Education

Hamilton, Lewis S., Counsel for Defendants/Appellees Butler County Board of Education and Board Members, Linda Hamilton, Mickey Jones, Michael Nimmer, Lois Robinson and Brandon Sellers

Huffaker Jr., Hon. R. Austin, United States District Judge, Middle District of Alabama

Ingram, Allison, Counsel for Defendants/Appellees, former Superintendent John Strycker and current Superintendent Joseph Eiland

Jones, Mickey, Defendant/Appellee, Member of the Butler County Board of Education

Marsh, John, Counsel for Defendant/Appellee, former Superintendent John Strycker and current Superintendent Joseph Eiland

Moore, Lenicki, Plaintiff

Nimmer, Michael, Defendant/Appellee, Member of the Butler County Board of Education

Relf, Victoria, Counsel Plaintiff/Appellant Regina Bennett

Robinson, Lois, Defendant/Appellee, Member of the Butler County Board of Education

Seale, James R., Counsel for Defendants/Appellees Butler County Board of Education and Board Members, Linda Hamilton, Mickey Jones, Michael Nimmer, Lois Robinson, and Brandon Sellers

Sellers, Brandon, Defendant/Appellee, Member of the Butler County Board of Education

Sims Jr., James C., Counsel for Plaintiff/Appellant Regina Bennett

Strycker, John, Defendant/Appellee, former Superintendent of Education for the Butler County Board of Education

Thompson, Hon. Myron H., United States District Judge, Middle District of Alabama

Thornton, Willie, Plaintiff

West, Joseph, Plaintiff

West, Margaret, Plaintiff

B.      Appellee Butler County Board of Education is a governmental entity of the State of Alabama.  It has no parent companies or subsidiaries to report. Appellee Board Members Linda Hamilton, Mickey Jones, Michael Nimmer, Lois Robinson, and Brandon Sellers are individuals. Appellees former Superintendent John Strycker and current Superintendent Joseph Eiland are individuals.  Appellant Regina Bennett is an individual.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral Argument is not requested by the Appellees.  All issues involved in this appeal are legal issues which the parties have fully briefed in the District Court and on appeal.

# **TABLE OF CONTENTS**

Certificate of Interested Persons ................................................i

Statement Regarding Oral Argument ....................................iv

Table of Contents .................................................................v

Table of Authorities .......................................................... viii

Summary of the Argument.....................................................1

Statement of the Case...........................................................3

Statement of Additional Facts................................................5

Argument............................................................................9

I.    The District Court Did Not Abuse Its Discretion Or Commit Error
      When It Denied The Plaintiffs' Motion To Amend The Complaint ..............9

      A.    The District Court properly denied Plaintiffs' Motion for
            Leave to Amend as untimely pursuant to the
            Scheduling Order entered by the Court...............................12

      B.    The District Court properly denied Plaintiffs' Motion for Leave to
            Amend because the Plaintiffs failed to show good cause ..................13

      C.    The District Court properly denied Plaintiffs' Motion for Leave to
            Amend Because the Plaintiffs Unduly Delayed in Filing the
            Amendment ..........................................................17

      D.    The District Court properly denied Plaintiffs' Motion for Leave to
            Amend Because the Defendants Would Have Been Prejudiced.........20

      E.    Bennett Has Not Supported Her Entitlement To The Amended
            Complaint With Applicable Precedent................................22

II.   The District Court Correctly Held that Appellant, Regina Bennett,
      did not Suffer an Adverse Employment Action ...........................25

III.   The District Court Grant of Summary Judgment for the Defendants
       Should be Affirmed Even if this Court Changes the Standard for
       Establishing an Adverse Employment Action ...............................................32

       A.   Bennett Was Not Replaced by Someone Outside
            Her Protected Class. ...............................................................32

       B.   Bennett Was Not Treated Less Favorably Than Similarly Situated
            Employees Outside Her Protected Class ............................................33

       C.   Assuming, Arguendo, that Bennett Establishes a Prima Facie Case
            of Discrimination, The Defendants Presented Legitimate,
            Non-Discriminatory Reasons for Bennett's Transfer ........................34

Conclusion ..............................................................................................35

Certificate of Compliance ......................................................................38

Certificate of Service .............................................................................39

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974)...........................................25

*Alford v. City of Montgomery*, 79 F.3d 1160 (11th Cir. 1996)..............................33

*Bostock v. Clayton County*, 140 S.Ct. 1731 (2020) ...................................................29

*Byrant v. Jones*, 696 F.Supp.2d 1313 (N.D. Ga. 2010) ...........................................35

*Campbell v. Emory Clinic*, 166 F.3d 1157 (11th Cir. 1999) ...................................18

*Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022) ..................30, 31

*City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985) ...............33

*Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997)............................26

*Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008)..............................................27

*Critical Mass Energy Project v. NRC*, 975 F.2d 871 (D.C. Cir. 1992)............30, 31

*Davis v. Town of Lake Park*, 245 F.3d 1232 (11th Cir. 1991) ...............................25

*Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441 (11th Cir. 1998) ..................26, 27

*Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466 (11th Cir. 1991)...........................25

*Foman v. Davis*, 371 U.S. 178 (1962) ...............................................................17, 22

*Green v. School Bd. of Hillsborough County, Fla.*, 25 F.3d 974
        (11th Cir. 1994)............................................................................................32

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) .................30, 31

*Hester v. Int'l Union of Operating Engineers, AFL-CIO*, 941 F.2d 1574
        (11th Cir. 1991)............................................................................................17

*Hinson v. Clinch Cnty. Ga., Bd. of Ed.*, 231 F.3d 821 (11th Cir. 2000).................26

*Kimble v. Marvel Ent., LLC*, 576 U.S. 446 (2015) .............................................30, 31

*Laurie v. Ala. Ct of Crim. App.*, 256 F.3d 1266 (11th Cir. 2012)............................22

*Lee v. Macon County Bd. of Educ.*, 267 F.Supp. 458 (M.D. Ala. 1967)...........20, 21

*Lewis v. City of Union City, Georgia*, 918 F.3d 1213 (11th Cir. 2019) .................33

*Lindley v. F.D.I.C.*, 733 F.3d 1043 (11th Cir. 2013) ..................................................32

Nat'l Serv. Indus., Inc. v. Vafla Corp., 694 F.2d 246 (11th Cir. 1982).. .................18

*Patterson v. McLean Credit Union*, 491 U.S. 164 (1989).........................................31

*Sauvage v. Snow*, 413 F. Supp. 2d 1289 (M.D. Fla. 2005).......................................30

*Shipner v. E. Airlines, Inc.*, 868 F.2d 401 (11th Cir. 1989)..............................13, 17

*Smith v. Atlanta Indep. Sch. Dist.*, 633 F.Supp.2d 1364 (N.D. Ga. 2009) ..............33

*Tampa Bay Water v. GDR Engineering, Inc.*, 731 F.2d 1171 (11th Cir. 2013) ......18

*Taniguchi v. Kan Pac, Saipan, Ltd.*, 566 U.S. 560 (2012) ......................................29

*United States v. Burwell*, 690 F.3d 500 (D.C. Cir. 2012)...................................30, 31

*Webb-Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013
    (11th Cir. 2000)...........................................................................................2, 26

*Williams v. Bd. of Regents*, 477 F.3d 1282 (11th Cir. 2007)...................................32

**Statutes**

42 U.S.C. 2003-2(a)(1) ..............................................................................................29

Alabama Code § 16-24C-1 .........................................................................................28

Alabama Code § 16-24C-7(b).....................................................................................28

Alabama Code § 16-24C-7(c)......................................................................................28

**Rules**

Federal Rules of Civil Procedure 15.............................................................4, 12, 13

Federal Rules of Civil Procedure 16.........................................................................12

Federal Rules of Civil Procedure 21.........................................................................13

## SUMMARY OF THE ARGUMENT

The District Court properly denied the Plaintiffs' Motion to Amend the Complaint. All six of the then Plaintiffs jointly filed a First Amended Complaint shortly before midnight on December 17, 2019 (Doc. 67), the extended deadline for filing amended pleadings. Because no motion accompanied the purported Amended Complaint, it was a nullity. After being alerted to this deficiency by the Clerk's Office (Doc. 96, ¶5), on December 18, 2019 (a day after the amendment deadline), Plaintiffs untimely filed their Motion for Leave to File Amended Complaint. (Doc. 69). Bennett argues that because the parties had agreed to extend the scheduling order deadline for amendments to pleadings that there was "written consent" between the parties that amendments were to be allowed without motion or explanation. (Doc. 69). Had such an agreement existed, Bennett contends that no motion would have been required under Federal Rule of Civil Procedure 15(a)(2).

The District Court properly denied the Motion for Leave to Amend because (1) it was untimely, (2) the Plaintiffs failed to show good cause for the delay as there was never an agreement to allow the amended pleading – there was only an agreement to extend the Scheduling Order deadline, (3) the Plaintiffs unduly delayed in filing the Motion to Amend the Complaint because they were aware of almost all of the information that they attempted to amend long before they filed the *original complaint* yet they waited until a year after the Complaint was filed to attempt to

1

amend and, (4) the Defendants would be prejudiced because substantial discovery had already taken place, including the depositions of five of the six Plaintiffs, as well as two depositions of Defendant Strycker. In addition, Plaintiff Thornton purposefully and strategically tried to exclude Joseph Eiland from attending party depositions as the Board's representative such that he could not assist the defense, only to attempt to add claims against him after the depositions had taken place.

The district court applied the correct standard when considering whether Regina Bennett suffered an adverse employment action. In this Circuit, an adverse employment action requires a "serious and material change in the terms, conditions, or privileges of employment." *Webb-Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2000) (citations omitted). Regina Bennett did not suffer an adverse employment action. She simply changed positions in the same workplace for the same pay.

The Eleventh Circuit's definition of adverse employment action is consistent with the plain language of Title VII. The Eleventh Circuit's standard is not "heightened." Instead, it serves Title VII's purpose while rejecting the notion that courts are to substitute their judgment for the judgment of employers (particularly public employers) who must make reasoned, business-based, financially prudent decisions concerning their personnel.

Finally, there is no rational basis for overturning years of precedent by re-defining what an adverse employment action is, especially when, as in this case, the claimant cannot satisfy the remaining elements to survive summary judgment.

## STATEMENT OF THE CASE

On December 20, 2018, six (6) Plaintiffs filed their original Complaint against seven (7) Defendants. (Doc. 1). As concerns Plaintiff/Appellant Regina Bennett, the Complaint referenced her EEOC charge which was filed on September 13, 2018. (Doc. 69-2). Following a planning meeting, the parties submitted a report (Doc. 20) which served as the basis for the District Court's Uniform Scheduling Order and included a deadline to file motions to amend the pleadings by August 13, 2019. (Doc. 23, §4).

Almost three months later, the parties filed a joint motion to extend the deadlines to file motions to amend the pleadings (Doc. 29), which was granted by the District Court, thus extending the August 13, 2019, deadline to October 11, 2019. (Doc. 30).

During this time, the parties engaged in discovery, and Plaintiffs moved to have then Assistant Superintendent Joseph Eiland excluded from attending the depositions of the party Plaintiffs. (Docs. 40, 41, 43 and unnumbered docket entry following 41). The District Court granted the motion in part and denied it in part,

excluding Eiland from attending Plaintiff Thornton's deposition, but allowing him to attend the other party Plaintiffs' depositions. (Doc. 42).

The parties jointly moved the District Court again, *inter alia*, to extend the deadline for filing motions to amend the pleadings. (Doc. 48). The motion was granted, and the deadline for amending pleadings and adding parties was "reset" from October 11, 2019, to December 17, 2019. (Doc. 53).

On December 17, 2019, Plaintiffs filed an Amended Complaint, without first filing a Motion for Leave to Amend. (Doc. 67). The Amended Complaint purported to add a substantial number of legal claims, additional factual allegations and one new party defendant – Joseph Eiland, the same individual whom Plaintiffs asked the Court to exclude from attending party depositions as a representative for the BCBOE. (*Id.*). The next day, Plaintiffs filed a Motion for Leave to Amend the Complaint under *Fed.R.Civ.P.* 15. (Doc. 68). The motion to amend referenced the parties' agreement to extend the scheduling order deadline as a basis for compliance with Rule 15. (*Id.*) The Defendants filed an objection to the Motion For Leave to Amend, arguing that the motion was untimely, did not set forth "good cause," that Plaintiffs had unduly delayed, and that allowing the amendment would be prejudicial. (Doc. 73). The District Court denied the amended pleading. (Doc. 74).

Discovery continued and some sixty-two (62) days later, on March 10, 2020, Plaintiffs filed a Motion for Reconsideration of the order denying the amendment.

(Docs. 96 & 133-2). Defendants opposed the motion. (Docs. 98 & 113). On March 20, 2020, the District Court denied Plaintiffs' motion for reconsideration. (Doc. 120).

Discovery continued, and on May 23, 2020, Plaintiffs filed two motions – a Motion to Amend/Correct the Complaint, (Doc. 127), and a Motion to Supplement the Complaint. (Doc. 128). Defendants opposed these motions. (Docs. 129 & 133). The Court denied the motions on June 12, 2020. (Doc. 137).

Thereafter, Defendants filed motions for summary judgment with supporting briefs and evidence as to all six Plaintiffs. (Docs. 148-154, 156-168). Plaintiffs opposed the motions for summary judgment. (Docs. 173-189, 204, 206-210). Defendants submitted reply briefs in support of their motions for summary judgment. (Docs. 223-228). On July 11, 2022, summary judgment was granted in favor of the Defendants as to all claims of all Plaintiffs, except for Plaintiff Shawnda Bell's claim for racial discrimination by adverse employment action against the Butler County Board of Education. (Doc. 245). Final Judgment was entered on December 16, 2022, (Doc. 343), and Bennett timely filed an appeal on January 13, 2023. (Doc. 348).

## STATEMENT OF ADDITIONAL FACTS

Regina Bennett graduated from Troy University in 1999 with a degree in elementary education. (Doc. 162-10, p.28). She received a master's degree in

counseling from Troy University Montgomery. (Doc. 162-10, p.28).   After graduation, Ms. Bennett taught a preschool class of two and three-year-olds. (Doc. 162-10, p.34).  Ms. Bennett was later hired as a guidance counselor in 2002 at W.O. Parmer. (Doc. 162-10, pp.40-41).   She worked as a guidance counselor at W.O. Parmer until her reassignment to a kindergarten teaching position at W.O. Parmer in May 2018. Principal Jacquelyn Thornton (African American female) reassigned Ms. Bennett and is her current supervisor.  (Doc. 154-9, p.5 at ¶10).

Jacqueline Thornton served as principal of W.O. Parmer.  When Thornton became principal in 2015, Regina Bennett was already serving as the counselor. (Doc. 154-9, p.3 at  ¶2).  Although Principal Thornton and Ms. Bennett maintained a professional working relationship, Principal Thornton consistently had problems getting Ms. Bennett's assistance and cooperation in performing certain duties.  (Doc. 154-9, p.3 at ¶3).   For example, Ms. Bennett was openly defiant on multiple occasions when Principal Thornton, as the building administrator, assigned her to teach intervention lesson plans because the school was short-staffed. (Id.). This was especially problematic because the intervention students were those in the school population who needed extra guidance and instruction. (Id.).

In the fall of 2017, Principal Thornton learned from the Alabama State Department of Education that W.O. Parmer Elementary School would be losing one-half (1/2) counselor units for the following school year because the student

population fell below five hundred (500). (Doc. 154-9, p.4 at ¶4). When Principal Thornton informed Ms. Bennett that the school was losing the half unit, Ms. Bennett asked if it meant that she only had to do half the work. (Doc. 154-9, p.4 at ¶3). This was just another example of Ms. Bennett not being a team player for the W.O. Parmer students. (Doc. 154-9, p.3 at ¶3).

In the Spring of 2018, Principal Thornton began looking at her school's personnel based on the needs of W.O. Parmer's student population at that time. The half counselor unit that was lost was reallocated as a half teaching unit, and as the building administrator, Principal Thornton determined that it needed to be used for Response to Instruction ("RTI") purposes, meaning focused interventional instruction for students in need of additional support for both academic and behavioral needs. (Doc. 154-9, p.4 at ¶5). Principal Thornton knew it meant that the employee who filled this half unit would be working closely with those students who needed extra assistance and instructional intervention. (Id.). As she had experienced problems in assigning these types of tasks to Ms. Bennett in the past, Principal Thornton decided the best use of W.O. Parmer's personnel resources was to *reassign* Ms. Bennett within the school. (Id.). Moreover, Ms. Bennett was not RTI trained in academics (Id.). Ms. Bennett was both qualified and certified to be a kindergarten teacher. (Doc. 162-10, p.32).

In deciding how to best manage the reallocated units, Principal Thornton initially considered hiring two part-time teachers to fill the school's needs: one for the one-half (1/2) counselor unit and one for the one-half (1/2) RTI unit. (Doc. 154-9, p.4 at ¶¶5 & 8).  However, she learned that LeNicki Moore ("Ms. Moore"), an African American female, who was the counselor at Georgiana School, might be transferred to a new position within the Butler County system. (Id.). Principal Thornton was familiar with Ms. Moore as they had done some training together in the past and she knew that Ms. Moore was both a reading coach and RTI trained, as well an experienced counselor. (Doc. 154-9, p.4 at ¶¶5 & 9).  Her skillset met both of the immediate needs at W.O. Parmer based on the reduction in the counseling unit.  (Doc. 154-9, p.5 at ¶9).

Because Ms. Thornton was simply reassigning a current W.O. Parmer staff member to a different position within the same school, she did not need to seek the recommendation of the superintendent nor was a vote by the BCBOE required. (Doc. 154-9, p.4 at ¶7).  However, in keeping the central office apprised of her staffing decisions, she advised the central office of her intent to reassign Ms. Bennett toward the end of the 2018 spring semester. (Id.).  After considering her options and the needs of her students, Principal Thornton believed that *reassigning* Ms. Bennett at W.O. Parmer Elementary School would work to fit the personnel needs of the school. (Doc. 154-9, p.5 at ¶10).

8

On April 26, 2018, Dr. Strycker wrote Ms. Bennett advising her that she would be reassigned from school counselor at W.O. Parmer Elementary to elementary teacher at W.O. Parmer Elementary, effective July 1, 2018, and that she would not suffer any loss of pay as a result of the reassignment. (Doc. 162-11, p.9).

## **ARGUMENT**

## I.    **The District Court Did Not Abuse Its Discretion Or Commit Error When It Denied The Plaintiffs' Motion To Amend The Complaint**

Bennett asserted five claims in the original Complaint that are nearly identical to the five claims in the Amended Complaint.  The one that she alleges should have been included is described as a Title VII retaliatory hostile work environment in Count VIII. (Doc. 67, p.40, ¶¶312-317). A comparison of the retaliation claim alleged in Count VIII of the Amended Complaint with the retaliation claim asserted in Count V of the original complaint reveals that they are identical, with the exception that the word "increased" has been added in paragraph 317.

A comparison of the factual allegations Bennett asserted in paragraphs 123-143 of the Complaint with the factual allegations asserted in the Amended Complaint in paragraphs 231-235 reveals that paragraphs 235, and 253-255 are new, and that more specific information regarding the dates of her EEOC charge and Notice of Right to Sue are included in paragraphs 251-252. The additional alleged acts of retaliation included in the Amended Complaint are alleged to have occurred in

September 2019 and were known well before the December 17, 2019 deadline expired, yet Bennett did not timely move to add those claims.  It is irrelevant that these additional alleged acts of retaliation were not in the Complaint, however, because Defendants addressed these issues in their summary judgment filing.  (Doc. 159, pp.15-20, 30-33).

There are no real discernable differences as both the Complaint and the Amended complaint allege retaliation based upon Bennett's complaints of harassing behavior by  Principal Jackie Thornton, who allegedly reassigned her from her position as a counselor to a position as a kindergarten teacher in retaliation for her complaints about the harassment. (Docs. 1 & 67). As to the addition of further retaliation alleged in the Amended Complaint, Defendants addressed those issues in their summary judgment motion, so Bennett suffered no prejudice by the exclusion of the amendment. Thus, there does not appear to have been any error by the Court or prejudice to Bennett in the denial of the amendment.

But even if there were any additions of substance to her retaliation claim, when Bennett moved to amend the complaint, the action had been pending for almost exactly a year; the original Complaint was filed on December 20, 2018, and the Amended Complaint was submitted on December 17, 2019. The deadline for amending the complaint had been "reset" two times. Per the initial Uniform Scheduling Order, the deadline for filing motions to amend the pleadings was

August 3, 2019[1].  (Doc. 23, § 4). The District Court "extended" that deadline to October 11, 2019. (Doc. 30).  When the alleged additional acts of retaliation occurred in September 2019, Bennett should have timely amended her complaint in advance of the October 11, 2019 deadline. The District Court "reset" that deadline again to December 17, 2019. (Doc. 53).

When the Motion to Amend was filed, all six individual Plaintiffs were still parties and there were seven party defendants. Each of the six Plaintiffs were represented by all six attorneys – i.e. each of the six attorneys represented each of the six Plaintiffs.  The parties had engaged in extensive, expensive and voluminous discovery. By way of example, the Defendants had disclosed/produced some 302,134 documents and/or emails in response to Plaintiffs' multiple and duplicative requests. Moreover, five (5) of the six (6) Plaintiffs' depositions had been taken and defendant Strycker had sat for two (2) of his six (6) depositions[2]. In the interim sixty-two (62) day period between the District Court's Order denying Plaintiffs' Motion for Leave to Amend and the filing of their Motion for Reconsideration, Plaintiffs had also noticed and conducted an additional six (6) fact witness and board member

---

[1] The exact language in the scheduling order is as follows: "SECTION 4: Amendments to Pleadings. Motions to amend the pleadings and to add parties shall be filed by the parties on or before August 30, 2019." (Doc. 23).

[2] Over the strenuous objection of Strycker, the District Court allowed each Plaintiff seven (7) full hours to depose him, thus requiring him to sit for six (6) seven-hour depositions or 42 hours.

party depositions through completion. In their Motion to Amend the Complaint, Plaintiffs moved to amend under Rule 15(1)(B)(2)(sic) and argued that the parties' agreement to extend the Scheduling Order deadlines (Doc. 45) was in compliance with Rule 15. (Doc. 69). Because the Motion to Amend was filed pursuant to *Fed.R.Civ.P* Rule 15 rather *Fed.R.Civ.P* Rule 16, they made no argument as to good cause. When Plaintiffs filed their Motion for Reconsideration sixty-two (62) days later, they explained that they understood the District Court's Order granting the extension to omit the Scheduling Order requirement that a *motion* for leave of court to amend must accompany any amendments to pleadings.

### A. The District Court properly denied Plaintiffs' Motion for Leave to Amend as untimely pursuant to the Scheduling Order entered by the Court.

The District Court "reset" the deadline for seeking to amend pleadings or add parties to December 17, 2019. (Doc. 53, p.2, ¶(2)(D)). Although Plaintiffs filed an Amended Complaint shortly before midnight on December 17, 2019 (Doc. 67), they did not file an accompanying motion seeking leave to file the Amended Complaint. Instead, only after being advised by the Clerk's office the next day (December 18, 2019) that a motion was necessary, did Plaintiffs file a Motion for Leave to Amend the Complaint. (Doc. 69).

Rule 15(a) of the Federal Rules of Civil Procedure governs amended pleadings and provides that after a responsive pleading has been filed, subsequent

amendments are permitted only with leave of court. *Shipner v. E. Airlines, Inc.*, 868 F.2d 401, 406 (11th Cir. 1989). Rule 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the Court's leave."

It is undisputed that Plaintiffs failed to timely seek leave from the District Court to amend their complaint. On December 17, 2019, they filed an Amended Complaint, and asserted several new factual allegations, "at least ten new claims for relief[3]", and attempted to add a new party defendant whom they were able to strategically exclude from a deposition because he was not a party at the time. (Doc. 67). When the Amended Complaint was filed on December 17, 2019, it was procedurally flawed because it was not accompanied by a request for leave as required by *Fed.R.Civ.P.* 15 & 21. There is no ambiguity in the District Court's Scheduling Orders as it clearly spells out what must be done and when it must be done. When the Plaintiffs filed their Motion for Leave to Amend, it was untimely filed on December 18, 2019.

### B.    The District Court properly denied Plaintiffs' Motion for Leave to Amend because the Plaintiffs failed to show good cause.

Because the Plaintiffs failed to file their Motion for Leave to Amend within the time set forth in the Rule 16 Scheduling Order, as amended, the District Court further explained that "[r]egardless of whether the motion is 1 day or 100 days late,

---

[3] Appellant Brief (hereinafter "App.Br."), p.12

the Plaintiffs' motion nevertheless comes after the deadline and, therefore, Rule 16

must be followed in determining the propriety of the Plaintiffs' motion for leave."

(Doc. 74).

Pursuant to Federal Rule of Civil Procedure 16(b), a party moving to amend

the complaint after the deadline must first show "good cause." None of the Plaintiffs,

including Plaintiff Bennett, made a showing of good cause in their Motion for Leave

to Amend. (Doc. 69)[4]. Bennett submits that she first argued that "good cause" existed

for the untimely Motion for Leave to Amend in her Motion for Reconsideration filed

on March 10, 2020[5], some sixty-two (62) days after the Motion for Leave to Amend

---

[4] Even if this Court were to construe the Motion for Leave to Amend as arguing "good cause" based on (1) Plaintiffs' ***belief*** that there was an agreement in place between the parties regarding an extension of the deadline to file amended pleadings beyond the Court-ordered deadline of December 17, 2019; and (2) their filing of the Motion for Leave "within 24 hours" of the deadline (Doc. 96) both of these arguments fail. A party's misunderstanding of the district court's scheduling order is not a recognized ground for failing to comply with the deadline for filing amended pleadings. "[A]uthorities are legion for the proposition that attorney inadvertence, carelessness or oversight of a published deadline is insufficient, as a matter of law, to constitute 'good cause' under Rule 16(b)(4)." *Rogers v. Hartford Life & Accident Ins. Co.*, 2012 U.S. Dist. LEXIS 87433, at *8 (S.D. Ala., June 22, 2012) (*citing, e.g., Maryland Manor Associates v. City of Houston*, 816 F.Supp.2d 401 (S.D. Tex. 2011) (party's misunderstanding of scheduling order "does not establish good cause for filing an untimely motion for leave to amend.")).

[5] In her brief, Bennett states that "[o]n March 10, 2020, Plaintiffs filed a Motion to Reconsider Motion for Leave to Amend Complaint *that included Plaintiffs' showing of good cause as to why leave to amend the complaint should be granted.* (Doc. 96).*" This position is confirmed on the next page where Plaintiff argues "[t]o the contrary, the *Plaintiffs presented a showing of good cause to the court in its Motion to Reconsider Motion for Leave to Amend the Complaint.* (Doc. 96)." (Emphasis

14

was filed and long after the District Court denied the Motion. Even after Defendants raised numerous grounds for denying the Motion for Leave to Amend, none of the Plaintiffs submitted a reply or asked the Court for an opportunity to respond to the Defendants' arguments on lack of good cause, undue delay or prejudice. And even after the Court denied the motion—citing failure to show good cause—Plaintiffs waited and proceeded with additional discovery instead of immediately refiling the motion in an attempt to show good cause.

The amendment was properly denied because Bennett failed to show "good cause" in her Motion for Leave to Amend the Complaint. Bennett argues that because the parties jointly and unanimously agreed to an extension of the deadlines for amendments to the pleadings, such agreement was "the opposing party's written consent" under Rule 15(a)(2) to the amendment. Plaintiffs never shared a copy of the proposed Amended Complaint with the Defendants prior to filing it; therefore, Defendants never had the opportunity to provide "written consent." Bennett has cited no authority that merely agreeing in writing to extend scheduling order deadlines for amendments to pleadings is equivalent to "written consent" as contemplated by Rule

---

added). [Appellant Brief (hereinafter "AppBr.") at 12-13]. The "good cause" standard is no longer applicable when a motion for reconsideration is filed, instead, the Court must determine whether there is an "intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." (Doc. 120, p.8) (*quoting Summit Med. Ctr. Of Ala., Inc. v. Riley*, 284 F.Supp.2d 1350, 1355 (M.D. Ala. 2003)

15(a)(2). It defies common sense that a party could provide advance written consent to something that it has never seen, does not know what it will ultimately contain and does not know whether it is probative or prejudicial by merely agreeing to extend a scheduling order deadline.  Under this theory, Defendants would ostensibly have agreed to allow unfettered amended pleadings until the conclusion of the case, thus rendering the scheduling order deadlines meaningless.

Bennett (and the other Plaintiffs) argued below over the semantics of the language that was used when the deadlines were extended, first to October 11, 2019, and then to December 17, 2019.  Although the language is slightly different, the Orders clearly state that the new dates are to "reset" the prior deadlines.  There is nothing in the language of the Court's order extending the deadline for amendments that changes the *procedure* to amend a pleading; instead, there was simply a *reset* of the calendar date.  It is clear Defendants never provided any "written consent" for Plaintiffs to amend their complaint and/or add a party carte blanche. The assertion that an agreement to extend a scheduling order deadline is "good cause" for an untimely motion to amend the complaint does not meet the Rule 16 standard and the District Court did not commit error in denying the Motion to Amend.

16

**C.    The District Court properly denied Plaintiffs' Motion for Leave to Amend Because The Plaintiffs Unduly Delayed In Filing The Amendment.**

In her Motion for Reconsideration, Bennett argued for the first time that she had "good cause" for the delay in amending the complaint because it was "necessary to clarify existing allegations and causes of actions, while adding necessary claims that have been discovered during the discovery process." (App.Br. at 12).  Leave to amend should be denied if there is good reason, such as undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Shipner v. E. Airlines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989).  An amendment may be denied based on the lack of an adequate explanation of the delay[6]. *See Hester v. Int'l Union of Operating Engineers, AFL-CIO*, 941 F.2d 1574, 1578–79 (11th Cir. 1991) ("Although generally, the mere passage of time, without more, is an insufficient reason to deny leave to amend a complaint, *undue* delay may clearly support such denial.") (citations omitted)).[7]

---

[6] Here, Plaintiffs have offered no explanation at all.

[7] When affirming a district court's denial of leave to amend, the 1st Circuit has stated, "We have previously made the observation that the longer a plaintiff delays, the more likely a motion to amend will be denied.  And we have explicitly condemned a "wait and see" approach to pleading, whereby plaintiffs having the needed information, deliberately wait in the wings ... with another amendment to a complaint should the court hold the first amended complaint was insufficient*."*

17

In *Tampa Bay Water v. GDR Engineering, Inc.*, this Court addressed the issue of undue delay in the context of amending a complaint. TBW, the plaintiff, argued the district court wrongly denied its motion for leave to amend its complaint. 731 F.2d 1171, 1174 (11th Cir. 2013). The district court had determined TBW possessed knowledge of the facts supporting those additional claims contained in its proposed amended complaint for almost an entire year. *Id.* at 1187. This Court confirmed that undue delay is a valid reason to deny leave and found that the district court did not abuse its discretion in denying TBW's motion to amend. *Id.* at 1174, 1186. In reaching its holding, this Court reasoned:

> A district court may find undue delay when the movant knew of facts supporting the new claim long before the movant requested leave to amend, and amendment would further delay the proceedings. *See, e.g., Campbell v. Emory Clinic,* 166 F.3d 1157, 1162 (11th Cir. 1999)

> ("The facts upon which the claims...were based were available at the time the complaints were filed."); *Nat'l Serv. Indus., Inc.,* 694 F.2d at 249.

*Id.* at 1186.

The instant case is strikingly similar to *Tampa Bay Water*. Like TBW, the undisputed facts show that Bennett was well aware of the facts that made the basis for the retaliation claim that she wanted to add. She sought to "add" a retaliatory hostile

---

*Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 61 (1st Cir. 2018) (citations and quotations omitted).

work environment claim.  In Count 8 of the Amended Complaint, she alleges that she was harassed by her female Principal, Jackie Thornton, who was also an African American female, and that in retaliation for her complaints, she was reassigned from her position as a counselor to a kindergarten teacher. She was replaced by another African American female, LeNicki Moore. The retaliation was the reassignment, which occurred in April/May 2018. Bennett was well aware of *all* of this information before she even filed her EEOC charge. She checked both the discrimination and retaliation boxes on her EEOC charge which was filed on September 11, 2018. She also specifically referenced her complaints about harassment in her EEOC charge as well as her reassignment.

In addition, Plaintiffs were well aware of Eiland's identity and alleged role long before the filing of this action (December 20, 2018).  Yet, despite having opportunity to name him as an original party defendant or timely seek to add him during the prescribed time, Plaintiffs unduly delayed seeking to add him to the action.  In their December 20, 2018 Complaint, Plaintiffs allege Eiland violated Plaintiff Willie Thornton's civil rights. (Doc. 1, ¶13).  Moreover, as the Court record reflects, Plaintiffs were able to strategically exclude Eiland from attending Plaintiff Thornton's deposition as the BCBOE representative. (Docs. 40 & 42).  Plaintiffs described Eiland as an "active participant" in the discrimination that forms the basis of their claims and further referred to him  as "the actor" with regard to the facts that

19

underlie Plaintiff Thornton's claims. (Docs. 40 & 42). Moreover, seven (7) months before filing their initial complaint, Plaintiff Thornton's May 29, 2018 EEOC Charge of Discrimination specifically alleged employment discrimination against Eiland. (Doc. 69-2 p.5). Similarly, Eiland is also identified in Plaintiff Joseph West's Charge of Discrimination dated August 24, 2018. (Doc. 69-2, p.1). Plaintiffs possessed knowledge of Eiland when the original complaint was filed and unduly delayed adding him as a party to this matter until seconds prior to the expiration of this Court's December 17, 2019 deadline.

Plaintiffs make no attempt to show good cause for this delay. These are but a few examples demonstrating that Plaintiffs had knowledge of the alleged "new" matters that they wanted to amend. There can be no other explanation for Plaintiffs' delay other than dilatory motive. Plaintiffs had ample opportunity to timely seek to amend their complaint but did not. Plaintiffs' motion for leave presented no explanation—much less an adequate explanation—as to why they failed to timely amend their Complaint.

### D.    The District Court properly denied Plaintiffs' Motion for Leave to Amend Because The Defendants Would Have Been Prejudiced.

The purported First Amended Complaint contained a large amount of new factual content, and new allegations and averments not previously present and/or articulated in the original complaint. By way of example, paragraphs 60-73 of the First Amended Complaint pertain to *Lee v. Macon*, a historical federal court case

aimed at correcting racial disparities within the Alabama public school system. These new factual allegations and averments appear to allege that the BCBOE, or all named Defendants, somehow failed to comply with certain mandates flowing from *Lee v. Macon*, and that Plaintiffs were damaged due to same. *Lee v. Macon County Bd. of Educ.*, 267 F.Supp.458 (M.D. Ala. 1967). The First Amended Complaint also contains many additional claims not previously asserted and seeks to add Joseph Eiland as a party Defendant. (Doc. 67). Specifically, the purported Amended Complaint adds the following previously unpled counts: race discrimination by adverse employment action against Plaintiffs Thornton and Moore; adverse employment action against Plaintiffs West and Thornton based on retaliation; hostile work environment as to Plaintiffs West and Thornton; violation of Plaintiffs Thornton's and Moore's right to 14th Amendment Equal Protection; constructive discharge of Plaintiff Margaret West and retaliatory hostile work environment of Regina Bennett.

As described above, the parties had engaged in extensive and expensive discovery when Plaintiffs filed their Motion to Amend and Motion for Reconsideration. If Plaintiffs had been allowed to amend their Complaint and add a new party at that stage of the litigation, the extensive discovery process would essentially have been for naught, as the parties would have been forced to restart and/or retread both written and deposition discovery in light of the numerous claims

asserted by all of the Plaintiffs and the addition of a new party defendant, who would have been entitled to personal counsel and to separate and distinct discovery as to those claims asserted against him. This scenario could have easily been avoided had Plaintiffs exercised some degree of diligence by including these claims in their original complaint or by seeking leave to amend these claims which were clearly known to the parties prior to filing the original complaint. Consequently, allowing Plaintiffs to untimely amend their Complaint at that stage in the litigation would have prejudiced Defendants, who would undisputedly been forced to "re-expend" the considerable time, effort, and expenses already incurred to that point. This prejudice, in conjunction with Plaintiffs' clear neglect of the District Court's Scheduling Order, warranted denial of their Motion for Leave to Amend and their Motion to Reconsider.

### E. Bennett Has Not Supported Her Entitlement To The Amended Complaint With Applicable Precedent.

Bennett has cited only two cases to this Court on the propriety of the Amended Complaint: *Foman v. Davis*, 371 U.S. 178 (1962) and *Laurie v. Ala. Ct of Crim. App.,* 256 F.3d 1266 (11th Cir. 2012). Neither case supports Bennett's position, however. In *Foman*, when the plaintiff was attempting to amend the complaint, it does not appear that any discovery had taken place or that the action had been pending for a lengthy period, with extensive expensive discovery having already taken place. Nor does it appear that the scheduling order deadline for amending

pleadings and adding parties had been set and extended several times. There was no evidence of undue delay, bad faith, dilatory motive or prejudice.

This Court's ruling in *Laurie* actually supports the denial of Bennett's Amended Complaint. Under similar facts, this Court found that the district court did not abuse its discretion in denying an amended complaint. This Court affirmed the denial of the amendment and relied upon the reasons given by the district court. The district court found that the plaintiffs had unduly delayed in amending their complaint because they possessed knowledge of the claim when the EEOC charge was filed yet chose not to seek leave to amend the Complaint until well over a year after commencing the lawsuit. Plaintiffs presented no justification for waiting until the final stages of the litigation to amend the Complaint. In addition, the district court found that the defendants would have suffered prejudice if the amendment was allowed because they would not have been able to adequately address the new material unless the action was further delayed which would have unnecessarily delayed the final disposition of the action and the rights of the parties.

Similarly, in this case, the Amended Complaint contained copious new material regarding almost all of the Plaintiffs. As set forth above, almost all of the content Plaintiffs wanted to add was known to them well before the filing of the *original* Complaint, yet they chose not to include it in the original filing. Instead, they waited approximately one year to attempt to add that material and/or add a party

23

to the action. No reason was given for the delay. To date, the only reason given was that they believed they could under the extended scheduling order deadline. There has still been no explanation for the delay or why the material was not included in the original filing. Specifically, as concerns Bennett, the addition of the material on her claims was very limited. While she did add one paragraph of material that occurred after the filing of the original complaint, there was no error in excluding the Amended Complaint as it related to all of the Plaintiffs, not just Bennett. Further, Bennett asserted the same five counts in both the original Complaint and Amended Complaint. Moreover, the specific factual allegations that Bennett was seeking to include were recognized by the Defendants in their summary judgment filing and discussed at length. (Doc. 159, pp.15-20, 30-33).

Here, the District Court also found that the Plaintiffs had unduly delayed, given no good reason for the delay, and that the Defendants would be prejudiced by an amended complaint. (Doc. 120). By adding a new party, Joseph Eiland, many witnesses who were deposed would have to be re-deposed, and other discovery retread. Such a course would delay disposition of the case and prejudice the Defendants. The District Court provided numerous reasons for the denial of the Amended Complaint, the Motion for Reconsideration, and the Second Motion to Amend and Motion to Supplement the Complaint. Those reasons are supported by the record and were not an abuse of discretion.

## II.    THE DISTRICT COURT CORRECTLY HELD THAT APPELLANT, REGINA BENNETT, DID NOT SUFFER AN ADVERSE EMPLOYMENT ACTION.

Appellant Benett states that the second issue on appeal is "[w]hether the District Court erred in granting Defendants/Appellees Motion for Summary Judgment on Appellant Regina Bennett's individual Title VII claims…." (Doc. 35, p.10).  Despite referencing Bennett's _claims_ (plural), the only substantive issue raised in Bennett's _Brief_ is the district court's conclusion that Bennett failed to establish that she suffered an adverse employment action.  (Doc. 35, p.28).

Bennett asserts that the district court's holding constituted a "heightened standard" that "conflicts with the statute's objectives."  (Doc. 35, p.19).  However, the district court articulated and applied the proper standard and properly granted summary judgment for the defendants.

The legislative purpose for Title VII is remedial. "Congress enacted Title VII…to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin." Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974).  Title VII was _not_ enacted to encourage or allow federal courts to sit as super-personnel boards, second-guessing business decisions. _Davis v. Town of Lake_ Park, 245 F.3d 1232, 1244, _citing Elrod v. Sears, Roebuck & Co.,_ 939 F.2d 1466, 1470 (11th Cir. 1991); _see also Combs v. Plantation Patterns,_ 106 F.3d 1519,

25

1543 (11th Cir. 1997) *(stressing that "federal courts do not sit to second-guess the business judgment of employers").*

Keeping the above principles in mind, an adverse employment action requires a "serious and material change in the terms, conditions, or privileges of employment." *Webb-Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2008) (internal quotation marks omitted). A transfer can be considered an adverse employment action only if it involves a reduction in pay, prestige or responsibility. *Hinson v. Clinch Cnty. Ga., Bd. of Ed.*, 231 F.3d 821, 828 (11th Cir. 2000)(quoting *Doe v. Dekalb County Sch. Dist*, 145 F.3d 1441, 1448 (11th Cir. 1998)).  This court uses an objective test, asking whether a reasonable person in plaintiff's position would view the employment action in question as adverse. *Doe v. Dekalb*, 145 F.3d at 1449.  The employee's subjective view of the adversity is irrelevant. *See Webb-Edwards*, 525 F.3d at 1031 (The relevant inquiry is whether the employment action is "materially adverse as viewed by a reasonable person in the circumstances, regardless of the employee's subjective view of the significant adversity").  Under the above-stated standard (which is not "heightened" at all), Bennett's reassignment within W.O. Parmer was not an adverse employment action.

As properly stated by the district court below, an actionable qualifying adverse employment action in a Title VII case "must in some substantial way alter the employee's compensation, terms, conditions, or privileges of employment,

deprive him or her of employment opportunities, or adversely affect his or her status as an employee." Doc. 245, p. 15 of 55 (*quoting Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). As correctly stated by the district court, Bennett did not suffer an adverse employment action.

A transfer to a different position may be considered adverse if it involves a reduction in pay, prestige or responsibility. *Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998). Bennett's transfer did not result in a reduction in pay, prestige, or responsibility. Bennett conceded that she suffered no loss in pay. (Doc. 162-10, p.17). Bennett did not establish that she suffered any loss in prestige or responsibility, either. In the *Affidavit* Bennett filed in opposition to Defendants' Motion for Summary Judgment below, Bennett offered subjective and conclusory assertions about the loss of prestige and responsibility. (Doc. 189-5, pp.5-6, ¶¶5-6). Bennett offered no objective evidence that she would have less responsibility. Bennett also testified that a teaching position was no less prestigious than a guidance counselor position. (Doc. 162-10, p.33) (*"I basically don't say that teaching is a lesser prestige job because it is a noble one…"*). Simply put, the district court correctly concluded, based on the evidence (or, more accurately, the lack of evidence) presented in this case, that Bennett did not suffer an adverse employment action.

Although the question of whether an employment action is adverse turns on federal, and not state law, the statute governing Bennett's transfer tends to establish that the reassignment – to another position within her same school – was not adverse.

Bennett's reassignment was governed by Alabama's *Students First Act* (Ala. Code § 16-24C-1*, et seq* ("SFA").  In pertinent part, the law states:

> A chief executive officer may reassign a teacher to any grade, position, or work location within the same school, campus, instructional facility…to any teaching position or work location that is under the control and jurisdiction of the institution, as the needs of the employer require. For a tenured teacher,…[t]he reassignment may only be to another position for which the teacher holds appropriate certification, and the reassignment may not entail a loss of or reduction in compensation. Such reassignments are not subject to challenge or review under this chapter.

Ala. Code § 16-24C-7(b).  The governing statute recognizes that the employment action at issue in this case – Regina Bennett's reassignment – was not *adverse*.  A reassignment within a school with no reduction in pay is not subject to challenge or review under the SFA.  In contrast, the SFA provides that a proposed transfer to a different location, school or campus requires school Board approval after an employee is given an opportunity to present the reasons the employee should not be transferred.  *See* Ala. Code § 16-24C-7(c).  The fact that a reassignment such as the one in this case can be done without further approval or review by the employer indicates that such a reassignment should not be considered as adverse to the employee.

In its *Amicus Brief*, the United States urges this Court to revisit and reverse its own precedent and, in effect, hold that any and all employment actions are adverse under Title VII. The United States' position is both legally and practically unsound.

The United States' argument presupposes that any transfer or denial of a requested transfer is, in fact, discriminatory. (Doc. 39, p.11). Every reference in its *Amicus Brief* is to "discriminatory" transfers. The United States asks this Court to look at the plain language of the statute and consider the "ordinary meaning" of the phrase "terms, conditions, or privileges of employment." (Doc. 39, p.15) (*citing Taniguchi v. Kan Pac, Saipan, Ltd.,* 566 U.S. 560, 566 (2012)). The United States fails to ask this Court to consider, however, the "ordinary meaning" of the word *discriminate* in the statute. Section 703(a)(1) of Title VII makes it unlawful for an employer to *discriminate against* an individual with respect to the terms, conditions, or privileges of employment. *42 U.S.C. 2003-2(a)(1)*. The term *discriminate* means "to make a difference in treatment or favor on a basis other than individual merit." *http://www.merriam-webster.com/dictionary/discrminate.* There is no violation of Title VII unless a person is treated *differently* than others. An adverse employment action therefore necessarily encompasses a *difference. See Bostock v. Clayton County, 140 S.Ct. 1731, 1740, 207 L.Ed.2d 218 (2020) (stating, "[t]o 'discriminate against' a person…would seem to mean treating that individual worse than others who are similarly situated"(citation omitted)).* Thus, the plain language of the statute

actually requires that there be some injury or "adversity" in the employment decision for it to be actionable under Title VII. The position that *any* change in employment satisfies this standard is untenable. Such a change would undoubtedly make the courts the ultimate arbiter of even the most trivial personnel actions. As stated below:

> "In all events, a lateral transfer of an employee into a job that he or she does not like as well as the prior job ***does not*** constitute an adverse employment action…As Judge Posner stated…otherwise every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit."

*Sauvage v. Snow,* 413 F. Supp. 2d 1289, 1299 (M.D. Fla. 2005) (emphasis added).

The United States urges this Court to act as the D.C. Circuit did in *Chambers v. District of Columbia*, 35 F.4th 870 (D.C. Cir. 2022), and overrule its own precedent. There simply is no basis for overruling this circuit's prior precedent. Furthermore, as stated by Justice Katsas in his dissent in *Chambers*:

> "Overruling precedent is never a small matter." *Kimble v. Marvel Ent., LLC, 576 U.S. 446, 455, 135 S. Ct. 2401, 192 L. Ed. 2d 463 (2015)*. According to the Supreme Court, doing so requires a "'special justification'—over and above the belief 'that the precedent was wrongly decided.'" Id. at 455-56 (quoting *Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 266, 134 S. Ct. 2398, 189 L. Ed. 2d 339 (2014))*. We too have recognized this basic principle of stare decisis. *United States v. Burwell, 690 F.3d 500, 504, 402 U.S. App. D.C. 193 (D.C. Cir. 2012) (en banc); Critical Mass Energy Project v. NRC, 975 F.2d 871, 875-76, 298 U.S. App. D.C. 8 (D.C. Cir. 1992)* (en banc). The Supreme Court further has stressed that "stare decisis carries enhanced force" for decisions interpreting statutes, because "Congress can correct any mistake it sees."

> *Kimble, 576 U.S. at 456; see Halliburton Co., 573 U.S. at 274; Patterson v. McLean Credit Union, 491 U.S. 164, 172-73, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989)*. We too have recognized the same principle, *Burwell, 690 F.3d at 504; Critical Mass, 975 F.2d at 875-76*, which applies [***54] even more clearly to lower-court decisions correctable by Congress or the Supreme Court.

*Chambers,* 35 F.4th at 894 (Katsas, J., dissenting).  The rationale expressed above should be applied here as this Court considers the United States' request.  With the above in mind, this Court should maintain its precedent and leave it to Congress to change the language of the statute if it sees fit to do so.  There simply is no rational basis for changing or overruling this Circuit's long-standing rule that a lateral transfer must constitute a material change in circumstances for it to be actionable under Title VII.

Finally, even if this Court is inclined to alter its requirements for establishing an adverse employment action, Regina Bennett's case does not present the factual basis for doing so.  It is undisputed that after her reassignment, Ms. Bennett suffered no loss in pay, benefits or the privileges of her employment.  Her contract length remained the same.  Despite a change in Ms. Bennett's roles and/or duties within W.O. Parmer, the circumstances of her employment certainly do not provide a clear reason for reversing this Circuit's precedent.

### III.    THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT FOR THE DEFENDANTS SHOULD BE AFFIRMED EVEN IF THIS COURT CHANGES THE STANDARD FOR ESTABLISHING AN ADVERSE EMPLOYMENT ACTION.

As this Court knows, an order granting a motion for summary judgment is reviewed *de novo*. *Lindley v. F.D.I.C.*, 733 F.3d 1043, 1050 (11th Cir. 2013). This court may affirm the district court's grant of summary judgment for the defendants for any reason supported by the record, even a reason not cited by the district court. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1301 (11th Cir. 2007).  Thus, even if this court changes the standard and decides that Bennett suffered an adverse employment action, summary judgment should still be affirmed because Bennett cannot satisfy the remaining requirements of a *prima facie* case of discrimination under Title VII.

### A.    Bennett Was Not Replaced by Someone Outside Her Protected Class.

Bennett was reassigned within her school and was replaced by one of her co-plaintiffs, LeNicki Moore.  Ms. Moore is an African American female.  She is therefore *not* outside Bennett's protected class.  As such, Ms. Bennett cannot establish the final element of her discriminatory transfer claim.  *See Green v. School Bd. of Hillsborough County, Fla.,* 25 F.3d 974, 978 (11th Cir. 1994) (holding that a plaintiff cannot make out a prima facie case if he or she does not establish that the position was in fact "awarded to a member of a non-protected class"); *see also*

32

*Alford v. City of Montgomery, Ala.*, 879 F. Supp. 1143, 1151 (M.D. Ala. 1995), *aff'd*, 79 F.3d 1160 (11th Cir. 1996).

### B. Bennett Was Not Treated Less Favorably Than Similarly Situated Employees Outside of her Protected Class.

To defeat summary judgment, plaintiff must show that she was treated differently from others who were similarly situated, and that the defendants had no rational basis for any alleged dissimilar treatment. *Smith v. Atlanta Indep. Sch. Dist.*, 633 F.Supp.2d 1364, 131 (N.D. Ga. 2009) (citing *Cleburne*, 473 U.S. at 439-42). Bennett asserts that she was treated differently than white counselors because no white counselors were transferred or reassigned. However, Bennett's argument is misplaced because she and the white counselors outside of W.O. Parmer were not similarly situated.

Bennett must show that she and her proposed comparators are "similarly situated in all material respects." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1224 (11th Cir. 2019) (*en banc*). The Eleventh Circuit has stated that an employer "is well within its rights to accord different treatment to employees who are differently situated in 'material respects' – *e.g.*, who engaged in different conduct, who were subject to different policies, or who have different work histories." *Lewis*, 918 F.3d at 1228. In this case, Bennett was reassigned within her school at the request of her building supervisor, Jackie Thornton. Bennett was the only counselor in the school. Bennett can point to no other counselor under Ms.

Thornton's supervision to whom she was similarly situated yet treated differently. In short, there is no comparator for Ms. Bennett.

### C. Assuming, *Arguendo*, that Bennett Establishes a Prima Facie Case of Discrimination, The Defendants Presented Legitimate, Non-Discriminatory Reasons for Bennett's Transfer.

Bennett alleges that she was reassigned based on race and retaliation. However, the record evidence is clear that she was reassigned for legitimate, non-discriminatory reasons. Ms. Bennett's principal reassigned her after W.O. Parmer lost a one-half (1/2) counseling unit. The unit was reassigned as a teaching unit and Ms. Thornton elected to use it for RTI purposes, a more focused form of instruction for students in need of extra assistance. Ms. Thornton had problems getting Bennett to assist in this type of instruction in the past. Moreover, Bennett was not RTI trained in academics. Bennett's reassignment was initiated by her immediate supervisor, Principal Jackie Thornton. Thornton testified that the reassignment had nothing to do with Bennett's complaint or Bennett's race. (Doc. 154-9, p.5, ¶ 6). Bennett presented no evidence to the contrary. Thornton further testified that she had legitimate reasons for reassigning Bennett – to best allocate the personnel resources at her school after her school lost one-half (1/2) of a counseling unit (which was reallocated as a teaching unit). Principal Thornton thought it was in the best interest of the students at her school to reassign Ms. Bennett to the reallocated teaching unit. This is a valid reason under the law. *See Byrant v.*

*Jones*, 696 F.Supp.2d 1313, 1326 (N.D. Ga. 2010).   Nothing in the record in this case refutes Thornton's testimony.

Based on the foregoing, the district court properly granted summary judgment for the defendants, and its decision should be affirmed.

## **CONCLUSION**

The District Court properly denied the Motion for Leave to Amend because (1) it was untimely, (2) the Plaintiffs failed to show good cause for the delay as there was never an agreement to allow the amended pleading – there was only an agreement to extend the Scheduling Order deadline, (3) the Plaintiffs unduly delayed in filing the Motion to Amend the Complaint because they were aware of almost all of the information that they attempted to amend long before they filed the original complaint yet they waited until a year after the Complaint was filed to attempt to amend and, (4) the Defendants would be prejudiced because substantial discovery had already taken place, including the depositions of five of the six  Plaintiffs, as well as  two depositions of  Defendant Strycker.

The District Court applied the correct standard of whether there was a "serious and material change in the terms, conditions, or privileges of employment"  when it determined that Bennett did not suffer an adverse employment action. The Eleventh Circuit's definition of adverse employment action is consistent with the plain language of Title VII and is not "heightened."  Instead, it serves Title VII's purpose

while rejecting the notion that courts are to substitute their judgment for the judgment of employers (particularly public employers) who must make reasoned, business-based, financially prudent decisions concerning their personnel. There is no rational basis for overturning years of precedent by re-defining what an adverse employment action is, especially when, as in this case, the claimant cannot satisfy the remaining elements to survive summary judgment.

For all of the reasons stated above, the District Court's decisions denying the Motion for Leave to Amend the Complaint and granting the Defendants' Motion for Summary Judgment on Bennett's racial discrimination claim are due to be affirmed.

Respectfully submitted,

*/s/ Allison A. Ingram*
ALLISON A. INGRAM (ASB-6024-F68A)

*/s/ John W. Marsh*
JOHN W. MARSH (MAR173)
*Attorneys for Defendants/Appellees*
*John Strycker and Joseph Eiland*

**OF COUNSEL:**

Ball, Ball, Matthews & Novak, P.A.
445 Dexter Avenue, Suite 9045
Post Office Box 2148
Montgomery, Alabama 36102-2148
(334) 387-7680
jmarsh@ball-ball.com
ala@ball-ball.com

*/s/ Alicia F. Bennett*
ALICIA F. BENNETT (ASB-1564-T58A)

*/s/ James R. Seales*
JAMES R. SEALE (ASB-3617-E68J)
*Attorneys for Defendants/Appellees*
*Butler County Board of Education,*
*Mickey Jones, Michael Nimmer,*
*Lois Robinson, Brandon Sellers, and*
*Linda Hamilton*

**OF COUNSEL:**

Hill, Hill, Carter, Franco, Cole & Black, P.C.
31 Inverness Center Pkwy., Ste. 120
Birmingham, Alabama 35242
(334) 263-5969
jrs@hillhillcarter.com
abennette@hillhillcarter.com

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing brief complies with the type-volume limitations Federal Rule of Appellate Procedure Rule 32(a)(7)(B) because it does not exceed 13,000 words, excluding those parts exempted by 11th Cir. Local Rule 32-4, and complies with the typeface and type style requirements of Rule 32(a) because it is prepared in a proportionally spaced typeface using 14-point Times New Roman font.

*/s/ Allison A. Ingram*
ALLISON A. INGRAM
*Attorneys for Defendants/Appellees*
*John Strycker and Joseph Eiland*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, pursuant to Rule 25 and 31 of the Federal Rules of Appellate Procedure and the Eleventh Circuit Court Rules, I have on this the 7th day of August 2023, electronically filed the foregoing Appellee's Brief with the Court of Appeals Clerk using the CM/ECF System. A true and correct copy of the foregoing was also served on the following via electronic mail:

Fred D. Gray, Jr., Esq.
Stanley F. Gray, Esq.
Gray, Langford, Sapp, McGowan,
Gray, Gray & Nathanson, P.C.
PO Box 830239
Tuskegee, AL 36083-0329
fgrayjr@glsmgn.com
sgray@glsmgn.com
*Counsel for Regina M. Bennett, Appellant*

Lewis "Pete" S. Hamilton, Esq.
Powell & Hamilton
505 E. Commerce Street
Greenville, AL 36307
pete@powellandhamilton.com
*Counsel for Butler County Board of Education*

Charles E. Calloway, Esq.
The Calloway Law Firm LLC
PO Box 230044
Montgomery, AL 36104
charlescallowayattorneyatlaw@gmail.com
*Counsel for Regina M. Bennett, Appellant*

Victoria Relf, Esq.
The Relf Law Firm, LLC
311 N. Hull Street
Montgomery, AL 36104
victoria@imanilegal.com
*Counsel for Regina M. Bennett, Appellant*

James Carlton Sims, Jr., Esq.
Law Office Of J. Carlton Sims, Jr.
PO Box 373
Montgomery, AL 36101
jcsimslegal@gmail.com
*Counsel for Regina M. Bennett, Appellant*

*/s/ Allison A. Ingram*
ALLISON A. INGRAM
*Attorneys for Defendants/Appellees
John Strycker and Joseph Eiland*